

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-16-00224-CR

———————————————————

CARTER CAROL CERVANTEZ, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1395158D

Before Walker and Pittman, JJ., and Charles Bleil, Senior Justice, Retired
Memorandum Opinion by Justice Pittman

## MEMORANDUM OPINION

Carter Carol Cervantez appeals from her jury conviction for capital murder and automatic life sentence. She raises three points on appeal: (1) the trial court erred by denying her counsel's motion to withdraw based on the State's failure to comply with the Michael Morton Act; (2) the trial court erred by admitting recorded statements of her accomplice when he was not available for cross-examination; and (3) the trial court erred by denying her motions to suppress. We affirm.

## BACKGROUND

Cervantez does not challenge the sufficiency of the evidence to support her conviction. Because her issues on appeal are procedural, we provide only a short background.

Our review of the record shows sufficient evidence to prove that Cervantez and her boyfriend Clarence David Mallory—former employees of an American Eagle Outfitters (AEO) store at Hulen Mall who had been suspected of stealing almost $18,000 from the store's safe and were subsequently fired—drove to the assistant store manager Ashlea Harris's apartment, hit and choked her, bound her hands and feet with duct tape, and set fire to the apartment and her body. The evidence also supports a reasonable inference that they stole Harris's keys, which included the AEO store keys, and attempted to burglarize the store again early the next morning, the day after Black Friday sales. Fort Worth police, who had been staking out Cervantez's residence, followed the pair to the mall and arrested Mallory in his car outside after

2

Cervantez went inside.  Police could not find Cervantez inside the mall but found her later in the laundry room at her apartment; surveillance video confirmed she had walked the two miles home.

The police's investigation of the crime scene had quickly led to Cervantez and Mallory because

- one witness at Harris's apartment complex saw a 2008 black Infiniti with a toll tag parked next to Harris's car at 7:00 a.m. and 7:30 a.m. the morning of the murder;

- a second witness who lived in the apartment below Harris's saw a 2008 black Infiniti G35[1] leaving the apartment complex around 7:30 a.m. after hearing a prolonged loud scream or yell, followed by a thud, labored breathing, and the door slamming, from Harris's apartment; and

- the AEO store manager told police that Harris had been responsible for reporting Cervantez and Mallory as suspects in the prior theft and that Cervantez drove a black Infiniti.

After a grand jury indicted Cervantez, the State waived the death penalty and tried Cervantez before Mallory.

---

[1]Cervantez drove an Infiniti G37, which a witness testified look alike.

**DISCUSSION**

**I.    Denial of Attorney Ray's Motion to Withdraw Was Not An Abuse of Discretion**

In her first point, Cervantez complains that the trial court erred by denying a motion to withdraw by one of her trial attorneys, Bill Ray,[2] which was based on the State's alleged delay in providing discovery items in violation of the Michael Morton Act. According to Cervantez, "[t]his is a case of first impression . . . as to what should happen when the State does not provide a significant percentage of its case and the defense is compelled to review the matters provided late, and continue without the adequate time to examine the case as a whole." Although her argument appears to primarily complain about the trial court's denial of her verbal motion for continuance, we cannot review that ruling on appeal. *See Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012). Thus, we will instead review whether the trial judge abused his discretion by denying Ray's motion to withdraw.

**A. Law Applicable to Attorney Ray's Motion to Withdraw**

We review a trial court's decision on a motion to withdraw for an abuse of discretion. *King v. State,* 29 S.W.3d 556, 566 (Tex. Crim. App. 2000); *Johnson v. State*, 352 S.W.3d 224, 227 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). The trial court should balance the matters asserted with the potential for obstruction to the judicial process or interference with the administration of justice. *King*, 29 S.W.3d at

---

[2]The trial court had appointed Steve Gordon as Cervantez's other trial counsel.

4

566; *Ibarra v. State*, 456 S.W.3d 349, 355 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).

The Michael Morton Act amended and enlarged article 39.14 of the code of criminal procedure relating to the State's duty to provide discovery to criminal defendants. *See* Act of May 14, 2013, 83rd Leg., R.S., ch. 49, §§ 1–2, 2013 Tex. Sess. Law Serv. 106, 106–08; *Moody v. State*, 551 S.W.3d 167, 171 (Tex. App.—Fort Worth 2017, no pet.). Article 38.14(a) requires the State to provide discoverable material "as soon as practicable" upon receiving a defendant's timely request, and subsection (j) requires that before trial the parties must "acknowledge in writing or on the record in open court the disclosure, receipt, and list of all documents, items, and information provided to the defendant" in accordance with the statute. Tex. Code Crim. Proc. Ann. art. 39.14(a), (j) (West Supp. 2018). Article 39.14 does not contain an express remedy for the State's delay in providing discovery items. *See id.* art. 39.14.

**B. Background Facts Applicable to Attorney Ray's Motion to Withdraw**

Immediately before trial began, Attorney Ray informed the trial court in the context of arguing a motion to suppress that the State had not made 162 discoverable items available to the defense until less than 40 days before trial and had not made 46 or 48 of those items available to the defense until less than 30 days before trial. Ray did not list the specific items, and the State responded by identifying some items that had been available to the defense since 2014 and 2015. The prosecutor also told the trial judge that the State had transitioned to a different electronic discovery system

while the case had been pending, that the transition had been "rocky," and that in the past couple of months before trial—when Ray informed the State he was having trouble accessing documents—the State was able to show him where they were located in the system. But the prosecutor could not verify that every document had been made accessible to the defense.

Attorney Ray referred specifically to a GPS unit upon which he was trying to obtain testing; he asserted that although the State had possessed the unit since January 2015, he did not know about its existence until April 15, 2016, a month before trial. He had filed a motion to suppress any information from the GPS and any cell phone and cell tower data that testing of the GPS unit could possibly support or contradict. The State told the trial judge it was not intending to offer the GPS records, and the trial judge indicated that he would suppress them anyway. But Ray stated that depending on whether he could get testing of the GPS unit, he might be able to use those results to support his motion to suppress the cell phone and cell tower records.[3] When the trial court asked, "So you're making a possible Brady request?" he answered yes.

The State responded,

> We did not have a report on the GPS analysis. The -- just so we're real clear on the record as to what we are talking about, there was a GPS unit in the vehicle, and that was analyzed, separate and apart from

---

[3]Cervantez concedes in her brief that the GPS unit ultimately failed to yield any results.

the telephones.  That warrant and affidavit to do that has been in TechShare -- ECFS . . . for the pendency of this litigation.  The -- there was an analysis going on, but we didn't get the report until shortly before the -- a little while ago, March.

There was no need -- there was no reason why [Ray] had to wait, if he wanted to analyze that.  All he had to do was ask.  All he had to do was ask, and it would have been done.  We had the copy made.  We – we did not need it physically anymore -- I mean, the unit.  We could have given him anything he asked for at any time.  The only thing that we were slow on was actually getting our report.

When we finally got our report, it said there's nothing we can do.  There is no information that we can discern from the hard drive or from the chip within -- that is within the system.

. . . .

[Ray's] original concern was the fact the last sentence of the report essentially said more analysis is needed, or analysis is ongoing.

I have since, in the last -- well, two days ago or yesterday, I got an e-mail from Detective Randolph, who was conducting that analysis, who had shipped -- had shipped that question out to the current owners of the software, and they said there is nothing that we can do, and I've told [Ray] that this morning.

The trial judge then denied Cervantez's pending suppression motions.  Attorney Ray responded that he was not ready to go to trial because so many discovery items had not been provided until the 30-day period before trial.  He told the trial court that he feared he would be ineffective because he was "having trouble keeping up with what's downloaded and what's not."  The trial judge pointed out that

Ray had been working on the case "pretty much ever[] since it got filed," and he agreed.[4] The judge then denied Ray's verbal motion for a continuance.

After going off the record, the trial judge then explained on the record,

First of all, the Court's satisfied with the competence of both the Defense lawyers . . . . The Court is very familiar with their qualifications and their abilities, and they are very competent lawyers of their own right.

Secondly, I realize everybody -- this case has a lot of information. Not all of it is going to be admissible or used against the Defense, and not all of it had been uploaded in the last 30 days. Some of it has. But nonetheless, I think the issues that [Ray] is talking about, for the most part, have been resolved in terms of DNA and in terms of the -- the possible introduction of any information on the 2008 Infiniti GPS.

At this stage, I will find the Defense is not ineffective, and that they have had time to go over the discovery. And the only thing I'm going to suppress right now is the information in regards to Amazon, Search Warrant Number 32677, because it just flatly wasn't complied with under 39.14. I don't think it's anybody's fault. I think it was just an accident.

Ray then asked to withdraw—but Attorney Gordon did not—and the trial court denied his motion to withdraw.

The next day, the State filed a list of discovery items that it had provided to the defense, with the dates it had made those items available.

---

[4]The District Attorney's office filed a sworn complaint on December 10, 2014, and the trial court appointed Gordon to represent Cervantez that day. The clerk's record does not contain an order appointing Ray, but he signed a plea offer acknowledgement in April 2015, a little under two months after a grand jury indicted Cervantez.

## C. Attorney Ray Was Not Ineffective

Although Attorney Ray argued at trial that he believed he would be ineffective, Cervantez does not raise an ineffectiveness claim on appeal. *See Smith v. State*, Nos. 14-17-00330-CR, 14-17-00331-CR, 2018 WL 3354857, at *5 (Tex. App.—Houston [14th Dist.] July 10, 2018, pets. filed) (mem. op., not designated for publication) (noting that although one of counsel's stated reasons for asking to withdraw was an ineffectiveness concern, appellant did not raise ineffectiveness on appeal). Additionally, the record shows that Ray had been representing Cervantez for at least a year before trial. He did not ask to withdraw until a week before trial. *Cf. Ibarra*, 456 S.W.3d at 355 ("Appellant's counsel filed a motion to withdraw less than a week before trial. Given the proximity of the trial setting, the length of time the case had been pending, and appellant's failure to take steps to retain another lawyer or submit proof of indigency, the trial court did not abuse its discretion in denying counsel's motion to withdraw."). Ray and Gordon participated in a two-week trial at which part of their strategy was to show that the police could not definitively place Cervantez at Harris's apartment simply because she drove a black Infiniti. Ray filed and signed four motions to suppress, two of which expressly asserted this defensive theory. He also challenged all of the search warrant evidence based on this defensive theory—including any potential GPS results, cell phone and cell tower records, DNA and other items seized from Cervantez's car, Cervantez's bank records, and photographs.

Moreover, we cannot say that the trial court abused its discretion by denying the motion to withdraw when Ray was not able to identify the effect of the delay of obtaining any particular item, other than the GPS—which he could not have tested and which the trial court would have suppressed. We hold that the trial court did not abuse its discretion by denying Ray's motion to withdraw, which was, in effect, another attempt to obtain a continuance. We overrule Cervantez's first point.

## II. Admission of Recording with Mallory's Voice in Background Not Error

In her second point, Cervantez contends that the trial court erred by admitting part of the audio of a recording from Mallory's cell phone in which Mallory can be heard talking in the background with Cervantez about where AEO employees park at the mall. According to Cervantez, the trial court's admission of the audio of Mallory's comments violated her Confrontation Clause rights because she could not call him as a witness or cross-examine him about what he said. *See* U.S. Const. amends. VI, XIV.

### A. Cervantez Preserved Her Objection to Admission of the Recording

The State contends that Cervantez's objection to its playing the audio of the recording for the jury was untimely and, thus, that she did not preserve her complaint. An objection must be made as soon as the basis for the objection becomes apparent. Tex. R. Evid. 103(a)(1); *London v. State*, 490 S.W.3d 503, 507 (Tex. Crim. App. 2016). Ordinarily, this is before the trial court admits evidence. *See Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). But if the grounds for the objection

were not present until after the evidence was admitted, an objection after admission is timely. *Lackey v. State*, 364 S.W.3d 837, 843–44 (Tex. Crim. App. 2012).

When the State initially offered the cell phone recording, State's Exhibit 372, the trial judge asked if Cervantez had any objection, and counsel responded, "Not at this time." The trial court then admitted the exhibit "for all purposes." But when the State published the video to the jury, it did not play the audio portion on which Mallory's statements can be heard. When the State attempted to replay the video for the jury along with the audio from both Mallory and Cervantez, Cervantez objected because Mallory was not subject to cross-examination about what he said. Although the trial judge initially stated that Cervantez's objection was untimely, he entertained argument on the objection from both parties.

Ultimately, the trial court ruled that the jury could hear Mallory's statements on the video because they are nontestimonial, overruled Cervantez's objection, and allowed the State to publish the video and audio in their entirety to the jury.

Although Cervantez did not object when the trial court admitted the exhibit "for all purposes," the State did not initially publish the audio of Mallory's voice. Cervantez immediately objected when the State asked to do so. Because it is unclear whether the State intended to publish the audio of Mallory's statements at the time the evidence was first admitted or whether that ground for objection was not apparent to Cervantez until the State specifically requested to publish it—and because

11

the trial court considered and ruled on the merits of the specific complaint—we will review this point. *See id.*

## B. Cervantez's Sixth Amendment Rights Were Not Violated

At trial and on appeal, Cervantez argues that the publication of Mallory's part of the audio in State's Exhibit 372 violated her Sixth Amendment right to confrontation. She relies on cases that involved the admission of accomplice confessions to law enforcement that implicated the defendant. *See Gray v. Maryland*, 523 U.S. 185, 196–97, 118 S. Ct. 1151, 1157 (1998); *Richardson v. Marsh*, 481 U.S. 200, 208–09, 107 S. Ct. 1702, 1707–08 (1987); *Bruton v. United States*, 391 U.S. 123, 135–36, 88 S. Ct. 1620, 1627–28 (1968); *Harper v. United States*, 527 F.3d 396, 403 (5th Cir. 2008); *U.S. v. Garcia*, 836 F.2d 385, 390 (8th Cir. 1987); *Clark v. Maggio*, 737 F.2d 471, 477–78 (5th Cir. 1984), *cert. denied*, 470 U.S. 1055 (1985). But those holdings are inapposite because the admitted statements in those cases were all confessions to law enforcement and thus testimonial in nature; the Sixth Amendment does not exclude nontestimonial statements by an unavailable witness. *See Michigan v. Bryant*, 562 U.S. 344, 354, 131 S. Ct. 1143, 1153 (2011) (discussing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004)); *Sanchez v. State*, 354 S.W.3d 476, 485 (Tex. Crim. App. 2011).

Cervantez has not analyzed whether Mallory's statements on the video are testimonial, but they clearly are not. Testimonial statements include those "made under circumstances which would lead an objective witness reasonably to believe that

the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 52, 124 S. Ct. at 1364; *Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013) ("While the exact contours of what is testimonial continue to be defined by the courts, such statements are formal and similar to trial testimony."). Generally, a co-conspirator's statements made in the furtherance of the conspiracy are nontestimonial. *See King v. State*, 189 S.W.3d 347, 359 (Tex. App—Fort Worth 2006, no pet.) (citing *Crawford*, 541 U.S. at 56, 124 S. Ct. at 1367). Here, the video, when viewed in context of the other cell phone evidence (including text messages), does not show that Mallory had a reasonable belief that it would be used at trial; instead, it is further documentation of Cervantez's and Mallory's orchestrated plan to break into and steal cash in the safe of the AEO store, statements they could hardly have desired or anticipated would be admitted in court had they effected their plan. Thus, we hold that the trial court's admission of the entirety of State's Exhibit 372 did not violate Cervantez's Confrontation Clause rights.[5]

We overrule Cervantez's second point.

---

[5]Although Cervantez states in her brief—without citing any authority—that Mallory's statements on the audio are not "the statement[s] of a co-conspirator" for purposes of admissibility under rule 801(e)(2)(E), she provides no authority for this statement. Tex. R. Evid. 801(e)(2)(E). When the trial judge asked whether Mallory's statements should be admissible as a statement of a co-conspirator, her counsel conceded, "I don't see how it couldn't be." Regardless, she does not include argument or citations in her brief for the assertion that Mallory's statements were inadmissible under general hearsay rules. *See* Tex. R. App. P. 38.1(i).

## III. Trial Court Did Not Abuse Discretion by Denying Motions to Suppress

In her third point, Cervantez challenges the trial court's denial of her motions to suppress that challenged all of the evidence obtained pursuant to nine search warrants and accompanying affidavits because, on their faces, they fail to show that the black Infiniti witnesses saw at the apartment complex was Cervantez's black Infiniti and therefore fail to show probable cause. For the reasons set forth below, we disagree.

### A. Law Applicable to Our Review of the Search Warrants

We uphold a magistrate's probable cause determination if the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983); *Swearingen v. State*, 143 S.W.3d 808, 810 (Tex. Crim. App. 2004). In assessing the sufficiency of a supporting affidavit for an arrest or a search warrant, we review only the four corners of the affidavit, *Jones v. State*, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992), *cert. denied*, 507 U.S. 921 (1993), and interpret it in a common sense and realistic manner, recognizing that the magistrate was permitted to draw reasonable inferences, *Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006).

Probable cause exists when the facts and circumstances shown in the affidavit would warrant someone of reasonable caution to believe that the items to be seized were in the stated place. *State v. Elrod*, 538 S.W.3d 551, 556 (Tex. Crim. App. 2017). In reviewing a magistrate's probable cause determination, we need not "delve into all

of the facts that were omitted by the affiant, facts that could have been included in the affidavit, or contrary inferences that could have been made by the magistrate"; instead, "[t]he only issue is whether the facts that actually were in the affidavit, combined with all reasonable inferences that might flow from those facts, are sufficient to establish a 'fair probability'" that evidence would be found in the specified location. *See Rodriguez v. State*, 232 S.W.3d 55, 64 (Tex. Crim. App. 2007).

## B. Facts Applicable to the Nine Search Warrants

Cervantez challenges the trial court's denial of her motions to suppress all of the evidence obtained pursuant to nine warrants and accompanying affidavits[6] on one ground: on their faces, they did not sufficiently connect the black Infiniti witnesses saw at Harris's apartment complex to Cervantez's black Infiniti. We can classify the warrants into two groups: (1) the capital murder arrest warrant,[7] warrant to obtain Cervantez's DNA, and the two warrants to search Cervantez's apartment (the First

---

[6]In her briefing, Cervantez challenges the evidence obtained from all of the twenty-two warrants included in Defendant's Exhibit 11, which the trial court admitted for record purposes only. But the trial court determined that she did not have standing to challenge thirteen of them. Although Cervantez contends that the trial court was wrong about standing as to two of these warrants, she does not provide argument or authority in support of her contention. *See* Tex. R. App. P. 38.1(i). Nevertheless, even if the trial court erred by determining that Cervantez lacked standing to challenge evidence obtained pursuant to those two warrants, the same merits analysis that we apply to the other nine would apply to those two.

[7]The trial court appears to have misread the number for Cervantez's arrest warrant in determining standing; however, the facts in support of both Cervantez's and Mallory's arrest warrants are substantially the same.

15

Group); and (2) the warrants to search Cervantez's cell phone, car, and GPS (the Second Group).

**(1)     The First Group of Search Warrants**

The affidavits in support of the warrants in the First Group are more detailed than those in the Second Group and contain the following pertinent facts:

• Harris worked at the AEO store at Hulen Mall;

• several months before the murder, Harris had reported Cervantez and Mallory as suspects in the theft of "a large amount" of currency from the store;

• after Harris made the report, Cervantez's and Mallory's employment was terminated;

• Steve Lee, a neighbor of Harris's, saw a black Infiniti with a toll tag parked outside the apartment complex next to Harris's truck around 7:20 a.m. the morning of the murder;

• another neighbor, Patrick Sweet, who lived in the apartment below Harris's, heard a loud thump and screaming around 7:30 a.m. that morning; when he looked out his window, he saw a black Infiniti driving away from the complex;

• Cervantez owned a 2008 black Infiniti;

• the day after the murder, police followed Cervantez and Mallory in her black Infiniti to Hulen Mall, where Mallory dropped off Cervantez, who went inside but never came back out;

16

• a Fort Worth police officer found Cervantez walking in her apartment complex about three hours later; and

• a Fort Worth police officer took a picture of Cervantez's Infiniti and showed it to Lee, who said it looked the same as the car he saw parked by Harris's truck the morning of the murder.

### (2) The Second Group of Search Warrants

The affidavits supporting the warrants in the Second Group contain substantially similar facts but do not state that Lee identified a photograph of Cervantez's Infiniti. Instead, they contain the following:

• shortly before the fire department and police arrived at Harris's apartment on the morning of the murder, two witnesses saw a black Infiniti G35 with a toll tag leave the parking spot next to Harris's truck;

• Cervantez and Mallory had worked with Harris at the AEO store, Harris had recently reported them both as suspects in a theft of $18,000 from the store, and they were both terminated from employment;

• Fort Worth police learned that Cervantez had a 2008 black Infiniti G37 and were able to verify Cervantez's license plate number and address;

• police followed Cervantez and Mallory in the black Infiniti to Hulen Mall, where they parked the Infiniti in different areas of the lot and then Cervantez went inside;

• the mall was closed and their behavior was suspicious; and

17

• when police contacted Mallory in the parking lot, he told them Cervantez was a manager of Aeropostale and was going inside to do paperwork, but an officer who talked to a person inside the mall discovered Cervantez was not an Aeropostale employee.

**C. The Affidavits Are Sufficient to Support the Issuance of the Nine Search Warrants**

We hold that these facts are sufficient to show a substantial basis for concluding that the searches would uncover evidence of wrongdoing.

For the First Group affidavits, an eyewitness identified Cervantez's car as looking the same as the car he saw that morning parked at the apartment complex by Harris's truck close to the time firefighters found her bound and burned body. Together with the information that Harris, an employee of AEO, had recently reported both Cervantez and Mallory as suspects in a theft from the same store, that they were both terminated from employment thereafter, and that Cervantez owned a black Infiniti, these facts and circumstances would warrant a person of reasonable caution to conclude that the police would find evidence of the murder in Cervantez's apartment and from her DNA. *See Black v. State*, No. 08-12-00338-CR, 2015 WL 5604388, at *5–9 (Tex. App.—El Paso Sept. 23, 2015, pet. ref'd) (not designated for publication); *Ford v. State*, 444 S.W.3d 171, 193 (Tex. App.—San Antonio 2014), *aff'd*, 477 S.W.3d 321 (Tex. Crim. App. 2015), *cert. denied*, 136 S. Ct. 2380 (2016); *cf. Williams v. State*, No. 01-14-00165-CR, 2015 WL 1135715, at *5–6 (Tex. App.—Houston [1st

18

Dist.] Mar. 12, 2015, pet. ref'd) (mem. op., not designated for publication) (holding that search warrant for appellant's cell phone to find evidence of smash-and-grab robbery of jewelry store employees was supported by probable cause when facts showed confidential informant obtained watches stolen in the robbery from appellant). Although Cervantez argues that no one saw her or a car specifically known to belong to her at the crime scene, the police are not required to prove to a magistrate that a suspect was actually present at a crime scene before obtaining a warrant to look for evidence that could place that suspect at the crime scene. *See generally Gates*, 462 U.S. at 231–32, 103 S. Ct. at 2328–29 (quoting *United States v. Cortez*, 449 U.S. 411, 418, 101 S. Ct. 690, 695 (1981), for the proposition that probable cause "does not deal with hard certainties, but with probabilities"); *cf. Lewis v. State*, Nos. 01-09-00530-CR, 01-09-00531-CR, 2010 WL 3450246, at *3 (Tex. App.—Houston [1st Dist.] Aug. 31, 2010, no pet.) (mem. op., not designated for publication) ("Rangel was not required to confirm that the suspected joint actually contained marijuana before he could have probable cause to arrest appellant for possession of marijuana.").

Although the affidavits supporting the warrants in the Second Group do not include the information that Lee identified a photograph of Cervantez's car, they are nevertheless sufficient to support the judges' probable cause determinations. We are not to focus on what facts are not included in the affidavit. *See Rodriguez*, 232 S.W.3d at 62. We hold that the facts set forth in the Second Group affidavits are sufficient to

19

establish a fair probability that evidence would be found in those locations. *See Black*, 2015 WL 5604388, at *5–9; *Ford*, 444 S.W.3d at 193.

We overrule Cervantez's third point.

## CONCLUSION

Having overruled all three of Cervantez's points, we affirm the trial court's judgment.

/s/ Mark T. Pittman
Mark T. Pittman
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: October 25, 2018