BONNIE SUDDERTH, JUSTICE
In two points, Appellant Donald Moody appeals his conviction for failing to comply with registration requirements as a sex offender. See Tex. Code Crim. Proc. Ann. Arts. 62.101 -.102 (West Supp. 2016). We affirm.
Background
Appellant was charged on March 26, 2014, with failing to comply with sex offender registration requirements.[2] Specifically, the indictment alleged that Appellant failed to report to the Fort Worth Police Department (FWPD) within 30 days before or after his birthday. See id. art. 62.058(a) (West Supp. 2016).
On June 6, 2014, Appellant's counsel filed a request for discovery seeking "all business records and governmental records that are available to the prosecution or within the knowledge of the prosecution" and "[a]ll exculpatory evidence and facts which are known or by the exercise of due diligence should be known by the prosecution." On the same day, Appellant also filed a motion for discovery and inspection of evidence that included a request for "[a]ll videotapes and tape recordings of the Defendant." On October 2, 2014, Appellant issued a subpoena seeking, *169 in relevant part, any video recordings showing the reception or front desk area of the FWPD's downtown location from December 23, 2013, through February 10, 2014. In response to the subpoena, the State filed an affidavit by Officer Bryan Bice stating that he was the custodian of records for the FWPD and that, after a diligent search, the FWPD had not located any such video recordings.
Appellant filed a motion to dismiss the case on the basis that the State had violated article 39.14 of the code of criminal procedure and Brady v. Maryland , 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and had committed spoliation of evidence. According to Appellant, any such video would have contained exculpatory or mitigating evidence showing that he attempted to register within 30 days of his birthday.
At trial, a hearing was held outside the presence of the jury. Officer Bice testified that at the time of trial he was working in the SCRAM unit and meeting with and registering sex offenders who had made appointments to meet with him. Until about two months before trial, Officer Bice was the custodian of records and prepared records in response to public information requests and subpoenas. Officer Bice testified that there was a video camera in the reception area of the FWPD's downtown location at 350 W. Belknap and that the recordings from that camera are stored on a hard drive with limited storage capacity. According to Officer Bice, the hard drive would record over previously-recorded video once it reached its storage capacity.
When he received the subpoena from Appellant's counsel, Officer Bice looked for video recordings and was told by an IT employee, Michael Munday, that none existed.[3] Officer Bice testified that he based his affidavit on Munday's representation that no video recordings existed.
Officer William Yager of the FWPD testified that he had experience retrieving video footage from the lobby area of the FWPD downtown building.[4] According to Officer Yager, video recordings of the lobby were retained by the FWPD for approximately two to three months. He acknowledged that the FWPD contracted with another company, Sentinel, which provided the software and cameras for the recording system, but he denied that Sentinel had any access to any of the video. Officer Yager testified that he did not believe a video recorded from December 23, 2013, through February 10, 2014, would have been in existence at the time of trial.
Matt Bryant, a vice president of Sentinel, testified that Sentinel did not store any video recordings made by the system and that all recordings were stored onsite in hardware located in the FWPD building. Bryant further testified that the storage server in the FWPD building worked on a "first in, first out" configuration in which old video is overwritten by new video when the storage drive reaches its capacity.
Munday testified that he managed most of the FWPD's IT infrastructure and that the requested recordings would not have been in existence at the time they were requested in October 2014. Munday testified that it would be possible to download *170 recordings to larger hard drives in order to preserve them, but that no such protocol was in place within the FWPD.
The trial court denied Appellant's motion to dismiss and his request for a spoliation instruction. Appellant was convicted of failing to comply with sex offender registration requirements and sentenced to five years' confinement.
Discussion
Appellant brings two points on appeal. In his first point, he argues that the trial court erred by denying his motion to dismiss on the basis of Brady and article 39.14(a). In his second point, he argues that the trial court erred by denying his motion to dismiss, declining to exclude related evidence, and refusing to give the jury an adverse inference instruction because the State destroyed "potentially exculpatory evidence."
I. Brady claim
In addressing the State's failure to preserve evidence in a criminal trial, there is a distinction between "material exculpatory evidence" and "potentially useful evidence." See Arizona v. Youngblood , 488 U.S. 51, 57-58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988) ; Ex parte Napper , 322 S.W.3d 202, 229 (Tex. Crim. App. 2010). A federal due process violation occurs if the State fails to disclose material exculpatory evidence, regardless of whether the State acted in bad faith. Illinois v. Fisher , 540 U.S. 544, 547, 124 S.Ct. 1200, 1202, 157 L.Ed.2d 1060 (2004). Thus, a Brady claim requires proof that the sought-after evidence was both material and favorable to the defendant such that there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. Pena v. State , 353 S.W.3d 797, 809 (Tex. Crim. App. 2011).
In contrast, if a defendant seeks to prove a federal due process violation based on a state's destruction of merely "potentially useful evidence," the defendant must show that the State acted in bad faith in destroying the evidence. Fisher , 540 U.S. at 547-48, 124 S.Ct. at 1202 ; Youngblood , 488 U.S. at 57-58, 109 S.Ct. at 337. Youngblood described potentially useful evidence as "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." 488 U.S. at 57, 109 S.Ct. at 337. Although courts occasionally blur the distinction between Youngblood and Brady ,[5] Youngblood is properly applied to cases in which the government no longer possesses the disputed evidence, whereas Brady is properly applied to cases in which exculpatory evidence remains in the government's possession. Little v. State , 991 S.W.2d 864, 866 (Tex. Crim. App. 1999) ; Williams v. State , No. 02-09-00175-CR, 2011 WL 1833136, at *4 (Tex. App.-Fort Worth May 12, 2011, no pet.) (mem. op., not designated for publication) (treating Brady claim regarding destroyed evidence as a Youngblood claim). As the Supreme Court explained in Youngblood :
Part of the reason for the difference in treatment is found in the observation made by the Court in [ California v. Trombetta , 467 U.S. 479, 486, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984) ], that "[w]henever potentially exculpatory evidence is permanently lost, courts face *171 the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." Part of it stems from our unwillingness to read the "fundamental fairness" requirement of the Due Process Clause ... as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution. We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e. , those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant.
488 U.S. at 57-58, 109 S.Ct. at 337 (citation omitted).
Appellant admits that the testimony indicated that the video recordings he sought had been destroyed and were not in existence by the time they were subpoenaed prior to trial. Therefore, although he has phrased his complaint as a Brady complaint, it is more properly considered as a complaint under Youngblood of the destruction of "potentially useful evidence." Youngblood , 488 U.S. at 57, 109 S.Ct. at 337 (holding that failure of police to preserve potentially useful evidence was not denial of due process of law absent defendant's showing bad faith on part of police); see also Rodriguez v. State , 491 S.W.3d 18, 31 (Tex. App.-Houston [1st Dist.] 2016, pet. ref'd) (treating Brady claim about lost surveillance video as a Youngblood claim).
Such a claim requires a showing of bad faith, Fisher , 540 U.S. at 547-48, 124 S.Ct. at 1202, but Appellant does not argue to this court that the State acted in bad faith and there was no showing of bad faith at trial. He has therefore forfeited any claim that the State failed to preserve "potentially useful evidence" because such a claim requires a showing of bad faith on the part of the State. See Tex. R. App. P. 33.1(a)(i) ; Youngblood , 488 U.S. at 57-58, 109 S.Ct. at 337. We therefore overrule Appellant's first point as it pertains to his Brady / Youngblood claim.
II. Article 39.14
While Texas law previously required the defendant to show good cause for the discovery of evidence from the State, see Act of May 30, 2009, 81st Leg., R.S., ch. 276, 2009 Tex. Gen. Laws 732, 733 (amended 2014) (current version at Tex. Code Crim. Proc. Ann. art. 39.14 ), the passage of the Michael Morton Act in 2014 amended article 39.14(a) to now require that the State, upon request of the defendant, produce evidence that "constitute[s] or contain[s] evidence material to any matter involved in the action and that [is] in the possession, custody, or control of the state or any person under contract with the state." Tex. Code of Crim. Proc. Ann. art. 39.14(a) (West Supp. 2016). While these video recordings would appear to fall within the ambit of article 39.14, Appellant concedes that by the time he requested them they were no longer in existence. Furthermore, Appellant does not provide argument or authority to explain why article 39.14(a) would impose any greater duty of preservation on the State than has previously been imposed under Youngblood and other jurisprudence, that is, that the State may destroy potentially favorable evidence as long as it does not do so in bad faith, i.e., at a time when its potential for exoneration was apparent. See also Trombetta , 467 U.S. at 489, 104 S.Ct. at 2534 (noting that the State only has a duty to preserve evidence that possesses an exculpatory *172 value apparent before it is destroyed and that the defendant would be unable to obtain by other reasonably available means). We therefore overrule the remainder of Appellant's first point.
III. Spoliation instruction
Appellant's second point addresses in part the trial court's declining to give an adverse instruction to the jury regarding spoliation. Appellant's argument fails because there was no showing of bad faith. There must be a showing of bad faith on the part of the State to warrant a spoliation instruction. See Snell v. State , 324 S.W.3d 682, 684 (Tex. App.-Fort Worth 2010, no pet.) ; White v. State , 125 S.W.3d 41, 44 (Tex. App.-Houston [14th Dist.] 2003, pet. ref'd).[6] We therefore overrule this portion of Appellant's second point.
IV. Exclusion of "related evidence"
To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1) ; Douds v. State , 472 S.W.3d 670, 674 (Tex. Crim. App. 2015), cert. denied , --- U.S. ----, 136 S.Ct. 1461, 194 L.Ed.2d 552 (2016). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2) ; Everitt v. State , 407 S.W.3d 259, 263 (Tex. Crim. App. 2013). A reviewing court should not address the merits of an issue that has not been preserved for appeal. Ford v. State , 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).
Although Appellant mentions in his second point in his brief that the trial court erred in declining to "exclude related evidence," he does not identify what "related evidence" he contends should have been excluded. Nor does he supply us with a citation to the record showing that he made such a request in the trial court.[7] He has therefore failed to preserve this argument, and we overrule the remainder of his second point. See Fuller v. State , 253 S.W.3d 220, 232 (Tex. Crim. App. 2008), cert. denied , 555 U.S. 1105, 129 S.Ct. 904, 173 L.Ed.2d 120 (2009).
Conclusion
Having overruled both of Appellant's points, we affirm the trial court's judgment.

Appellant was previously convicted of indecency with a child in July 1993.

Officer Bice acknowledged that it could have been possible that a third-party vendor may have retained such recordings, but he testified that Munday had verified with that third party that they did not have any such recordings.

Officer Yager was not aware of the subpoena issued in this case and did not work with Officer Bice in attempting to retrieve any responsive recordings in this case.

See, e.g. , Burdick v. State , 474 S.W.3d 17, 26 (Tex. App.-Houston [14th Dist.] 2015, no pet.) (holding that destroyed video of booking and intake at jail was not material under Brady ); Higginbotham v. State , 416 S.W.3d 921, 926-27 (Tex. App.-Houston [1st Dist.] 2013, no pet.) (holding that destroyed video recording of defendant's arrest was not material under Brady ).

As we noted in Snell , although it is not precedential, Moore v. State , No. PD-74, 2004 WL 231323, at *5 (Tex. Crim. App.) (not designated for publication), cert. denied , 543 U.S. 931, 125 S.Ct. 312, 160 L.Ed.2d 233 (2004), is illustrative of the same principle. Snell , 324 S.W.3d at 684 n.2.

After examining the entire record, we have found no such request.