**MODIFY and AFFIRM; and Opinion Filed April 3, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00161-CR

**MANUEL ROCHA, JR, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 5**
**Dallas County, Texas**
**Trial Court Cause No. F15-75818-L**

# MEMORANDUM OPINION

Before Justices Brown, Schenck, and Pedersen, III
Opinion by Justice Schenck

Manuel Rocha, Jr. appeals his conviction for the murder of A.G. In five issues, appellant argues (1) the evidence is legally insufficient to establish he committed the offense, (2) the trial court abused its discretion in admitting certain surveillance video recordings, (3) the trial court abused its discretion in denying his request for a spoliation instruction, (4) the trial court erred in charging the jury on an unsupported theory of causation, and (5) the judgment should be reformed to accurately reflect that he was found guilty of murder, not capital murder. By cross-appeal, the State argues the judgment should be modified to show the jury convicted appellant of first-degree murder under section 19.02 of the penal code, and to reflect appellant's proper state identification number. We affirm the trial court's judgment as modified by this opinion. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

Approximately six months prior to her death, 20-year-old A.G. met Bryan Casillas through an internet dating site. Before meeting Casillas, A.G. worked for UPS and maintained a close relationship with her family. But that all changed after she met Casillas. A.G. quit her job at UPS, and in March 2015, she and Casillas began posting advertisements featuring A.G. on Backpage, an internet site for escorts. Some of the ads included a picture of A.G. wearing lingerie. The ads included a description of A.G.'s services, which ranged from "hanging out" to more illicit activities. When she went on dates, A.G. sent Casillas "drop pin" notifications through an application on her cell phone so he would know where she was.

On June 19, 2015, appellant, having seen A.G.'s escort ad on Backpage, arranged to have A.G. come to his house in Richardson for a "date." Appellant lived with his mother, two sisters, and a brother-in-law. A.G. arrived at appellant's house just after 2:00 a.m. on June 20. She had just completed another "date" in Flower Mound. At that time, appellant, his mother, sister, and brother-in-law were present in the house. Only appellant was awake. Appellant walked to A.G.'s car shortly after she arrived, and A.G. got out of her car and followed appellant into the house.

Approximately three hours later, a neighbor's surveillance camera captured images showing appellant moving A.G.'s car to the driveway of a house adjacent to his own and walking back to his house. About twenty minutes later, appellant went back to A.G.'s car, repositioned it in the driveway so that the rear of the car backed up against the adjacent house. He opened the hatchback and then walked back to his house. A few minutes later, appellant returned to the vehicle and loaded something large into the back of the car, closed the hatchback, and walked back to the house. At approximately 6 a.m., appellant returned to the car with what appeared to be a gasoline can and drove away.

A surveillance video recorded A.G.'s car arriving at a janitorial supply business in Dallas at 7:32 a.m. Ten minutes later, the same surveillance camera recorded a person leaving the scene on foot, walking at first, and then running away.

Meanwhile, a man working at a bakery located near the janitorial supply business heard an explosion. He opened the back door of the bakery and saw smoke coming from a grassy area. He also saw a Hispanic male walking away from the scene.

Police and firefighters were called to the scene. They discovered a green Fiat, the car A.G. drove, parked in a grassy area, on fire. After the fire was extinguished, they discovered the partially burned remains of A.G. and retrieved appellant's identification and credit card from the vehicle.

Later that morning, appellant went to the home of his girlfriend and asked for a ride to work. She drove him to the yard where she normally takes him, but his work crew had already left. At the time, appellant had visible injuries on his body. He told his girlfriend the injuries were the result of a robbery and an accident. Upon discovering that his crew had already left their meeting spot, appellant used his girlfriend's phone to text his supervisor to report that he was in an accident, claiming that he had lost everything and had been unable to call previously. He made no mention of a robbery. Appellant's girlfriend then drove him to his house. No one saw appellant again until the police arrested him.

Appellant was indicted, and a jury trial ensued. At trial, the State offered video recordings from appellant's neighbor's surveillance system. Appellant's neighbor (the "Neighbor") testified that he programmed the camera to activate in response to motion and that after the murder, he collected all of the video that corresponded to the relevant time span and turned it over to the police. Because the camera did not continuously record, appellant objected to the admission of

the video recordings, arguing the State failed to properly authenticate them. The trial court overruled the objection and admitted the video recordings.

The State also offered a video recording from the janitorial supply business capturing the Fiat traveling to the area where it was ultimately discovered and the man leaving the scene. Appellant did not object to its admission. The State called the bakery employee to identify the man leaving the scene as a Hispanic male.

The State also called the medical examiner to testify about the autopsy of A.G. He provided the sole evidence of the cause of A.G.'s death. In his report, he concluded that A.G. died from strangulation and blunt-force trauma. During cross-examination, the medical examiner, stated that the blunt-force trauma probably by itself would not have been fatal, but it definitely could have played a role in the death, and that strangulation could have been fatal by itself.

At the charge conference, appellant requested a spoliation instruction regarding his Neighbor's surveillance video recordings and objected to the inclusion of a blunt-force-trauma theory of causation in the charge. The trial court denied the requested spoliation instruction and overruled appellant's objection to the inclusion of the blunt-force-trauma theory of causation.

The jury found appellant guilty of murder and the court sentenced him to 60 years' imprisonment. This appeal followed.

DISCUSSION

I. Sufficiency of the Evidence

In his first issue, appellant challenges the legal sufficiency of the evidence to support his conviction for murder, urging the State failed to prove he was the perpetrator of the crime.

A. Standard of Review and Applicable Law

In assessing the legal sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based

–4–

on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *McCay v. State*, 476 S.W.3d 640, 647 (Tex. App.—Dallas 2015, pet. ref'd). We must give deference to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Our role is only to ensure that the jury reached a rational conclusion, not to re-evaluate the weight and credibility of the evidence. *See Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993).

A person commits murder if he intentionally or knowingly causes the death of another. TEX. PENAL CODE ANN. §19.02(b)(1). A person intentionally causes the death if it is his conscious objective or desire to do so. *Id.* §§ 6.03(a), 19.02(b)(1). A person knowingly causes the death of an individual if he is aware that his conduct is reasonably certain to yield that result. *Id.* §§ 6.03(b), 19.02(b)(1). A jury may infer intent from any facts that tend to prove its existence, including the method of committing the crime and the nature of wounds inflicted on the victim. *Hart v. State*, 89 SW.3d 61, 64 (Tex. Crim. App. 2002).

### B.    Discussion

Appellant does not contest the sufficiency of the evidence to support a finding that someone murdered A.G. Instead, he challenges the sufficiency of the evidence to support a finding that he was the perpetrator of the crime. The evidence established appellant, his mother, sister, and brother-in-law were the only persons present in the house at the time A.G. was murdered. A reasonable inference from this evidence, which appellant acknowledges, is that one of them was the perpetrator of this crime. Appellant contends that the State's only incriminating evidence was that appellant tried to cover up A.G.'s murder, and urges because two of his family members were also involved in the cover-up—namely his sister and brother-in-law who, appellant now contends

drove to Lewisville and disposed of A.G.'s phone—it was pure speculation, he claims, for the jury to find he committed the crime.[1]

There is no question that the State is required to prove beyond a reasonable doubt that the accused is the person who committed the crime charged. *See Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984). Identity may be proved by either direct or circumstantial evidence or by reasonable inference. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). When there is no direct evidence of the perpetrator's identity elicited from trial witnesses, no formalized procedure is required for the State to prove the identity of the accused. *See Sepulveda v. State*, 729 S.W.2d 954, 957 (Tex. App.—Corpus Christi–Edinburg 1987, pet. ref'd). The State may prove identity by inference alone. *Robeson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd) (citing *United States v. Quimby*, 636 F.2d 86, 90 (5th Cir. 1981)).

In support of appellant's argument that the evidence is legally insufficient to establish he was the person who murdered A.G., he relies upon *Winfrey v. State* and *Ingerson v. State* and argues all that is present here is a strong suspicion of guilt, which does not equate with legally sufficient evidence of guilt. *Winfrey v. State*, 393 S.W.3d 763 (Tex. Crim. App. 2013); *Ingerson v. State*, 508 S.W.3d 703 (Tex. App.—Fort Worth 2016), *reversed*, 559 S.W.3d 501 (Tex. Crim. App. 2018). After appellant filed this appeal, the court of criminal appeals reversed *Ingerson* because it erroneously applied the abrogated reasonable hypothesis construct. Accordingly, appellant's reliance on *Ingerson* is unavailing. In addition, appellant's reliance on *Winfrey* is misplaced because that case is readily and materially distinguishable from this one.

*Winfrey* involved a conviction for capital murder during the course of a robbery. *Winfrey*, 393 S.W.3d at 765. In *Winfrey*, the universe of possible suspects was completely open. *Id.* There

---

[1] At trial, the State introduced evidence that A.G.'s cell phone pinged off a cellular tower in Lewisville at 7:27 a.m. on June 20, 2015. The Neighbor's surveillance video showed appellant's sister and brother-in-law leaving the house and getting into a red car at approximately 6:20 a.m. When the State attempted to suggest that appellant's family members took A.G.'s phone and drove it to Lewisville, appellant's counsel objected that there was no evidence the red car went anywhere other than out of the driveway. The trial court sustained appellant's objection.

was no physical evidence to connect Winfrey or her family to the crime scene, nor were she or any of her family members connected to the property assumed to be missing from the victim's home. *Id.* The only evidence that purported to directly connect Winfrey to the crime scene was a canine-scent lineup. The testimony in that case reflected the dogs detected Winfrey's scent on the victim's clothes, indicating that, at some unspecified time, she had contact with his clothing. *Id.* at 766. In finding a lack of sufficient evidence to support Winfrey's conviction, the court concluded dog-scent lineups, "when used alone or as primary evidence, are legally insufficient to support a conviction." *Id.* at 768 (citing *Winfrey v. State*, 323 S.W.3d 875, 876–78 (Tex. Crim. App. 2010)). In this case, the evidence established an uncontested and direct connection between appellant, the victim, and her removal from the crime scene and the universe of potential perpetrators was limited to three or four people. Thus, we conclude *Winfrey* is distinguishable.

We now consider whether the jury, as the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony, could have reasonably concluded, beyond reasonable doubt, that appellant was the perpetrator of this crime. In doing so, we note that juries are permitted to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007).

In *Hooper*, the court of criminal appeals recognized that without concrete examples, it can be difficult to differentiate between inferences and speculation, and between drawing multiple reasonable inferences versus drawing a series of factually unsupported speculations. *Id.* at 16. It therefore set forth the following hypothetical to illustrate the differences.

> A woman is seen standing in an office holding a smoking gun. There is a body with a gunshot wound on the floor near her. Based on these two facts, it is reasonable to infer that the woman shot the gun (she is holding the gun, and it is still smoking). Is it also reasonable to infer that she shot the person on the floor? To make that determination, other factors must be taken into consideration. If she is the only person in the room with a smoking gun, then it is reasonable to infer that she shot the person on the floor. But, if there are other people with smoking guns in the room, absent other evidence of her guilt, it is not reasonable to infer that she

was the shooter. No rational juror should find beyond a reasonable doubt that she was the shooter, rather than any of the other people with smoking guns. To do so would require impermissible speculation. But, what if there is also evidence that the other guns in the room are toy guns and cannot shoot bullets? Then, it would be reasonable to infer that no one with a toy gun was the shooter. It would also be reasonable to infer that the woman holding the smoking gun was the shooter. This would require multiple inferences based upon the same set of facts, but they are reasonable inferences when looking at the evidence. We first have to infer that she shot the gun. This is a reasonable inference because she is holding the gun, and it is still smoking. Next, we have to infer that she shot the person on the floor. This inference is based in part on the original inference that she shot the gun, but is also a reasonable inference drawn from the circumstances.

*Id.*

Appellant contends that the State's smoking gun was his attempt to cover up A.G.'s murder and urges that because two of his family members attempted to cover up the murder as well, by disposing of A.G.'s cell phone, miles away from appellant's home, there were other "smoking guns." But appellant's analysis fails to recognize that, unlike the example in *Hooper*, where the available evidence pointed simultaneously and equally to multiple possible suspects as a single perpetrator, here there is no evidence of any interaction between the victim and appellant's family members prior to her death. At most the evidence might be viewed, as appellant postulates, to show that his family members may have aided in relocating the victim's cell phone after her death. But, regardless of when or how others became involved in an attempted cover up, the evidence of appellant's involvement with the victim, prior to and after her death, is substantial, and in the eyes of a reasonable juror highly probative of his direct involvement in her death. It is undisputed, as further detailed below, that appellant, and only appellant, called A.G. to his home and had intercourse with her in the period immediately prior to her death. Indeed, the only evidence before the jury to explain the victim's presence in the home and the controversy that might have led to her demise, implicates appellant, and only appellant. Certainly, given the lateness of the hour, and the testimony of appellant's sister that appellant was the only person awake when she left the house for the night, which was shortly before A.G. arrived, a reasonable juror could conclude that only

appellant was awake when A.G. was murdered. Moreover, the State is under no obligation to disprove every conceivable alternative to a defendant's guilt to establish each element of the offense beyond a reasonable doubt. *Ramsey v. State*, 473 S.W.3d 805, 808 (Tex. Crim. App. 2015).[2]

In all events, the evidence in this case more than supports the jury's conclusion that appellant had a direct hand in the murder. Indeed, the undisputed evidence established appellant solicited A.G. to come to his house to have sex, she arrived at approximately 2:00 a.m., and appellant was the only person awake at the time. A.G. sent Castilla a drop pin notification of her location, and A.G.'s phone records placed her at appellant's home in the early hours of June 20. DNA found on a condom in appellant's bedroom indicated that he and A.G. had sex. The door to appellant's bedroom was secured not with a regular doorknob, but with a deadbolt that required a key to open it if the deadbolt was engaged. The Neighbor's surveillance video showed A.G. going into appellant's house, but never walking out. From this evidence, a rational jury could have reasonably concluded that A.G.'s death occurred while she was at appellant's house and in his bedroom. The surveillance video further showed that appellant, acting alone, loaded something into the Fiat and later returned with something that looked like a gasoline container, and then drove away. Given the subsequent discovery of A.G.'s naked body, wrapped in blankets, in the back of the Fiat along with a gasoline can, together with appellant's identification, a rational jury could have reasonably concluded that appellant had loaded A.G.'s body and the gasoline can into the car and burned her car and body in an attempt to obscure his crime.[3]

---

[2] Appellant urges that because the law of party culpability was not addressed in the jury charge, neither the jury nor this Court can consider the evidence supporting a conviction under the law of parties. Since appellant's conviction may be upheld if there is sufficient evidence he committed the murder as the primary actor, and because we conclude there is sufficient evidence appellant himself committed the murder, proof of his guilt through another's actions was not necessary. *See Brown v. State*, No. 05-91-01139-CR, 1993 WL 11063, at *4 (Tex. App.—Dallas Jan. 14, 1993, pet. re'f) (not designated for publication); *Guzman v. State*, 739 S.W.2d 381, 383 (Tex. App.—Corpus Christi-Edinburg 1987, pet. ref'd). Accordingly, appellant's law of the parties argument is without merit.

[3] Attempts to conceal incriminating evidence are probative of wrongful conduct. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

In addition, the evidence showed that on June 20, 2015, appellant had visible injuries to his body, including burns to his legs. Appellant told conflicting stories about how he sustained his injuries. A jury may consider a defendant's inconsistent statements as affirmative evidence of guilt. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). In addition, appellant disappeared immediately after A.G.'s death and was missing for about a week before he was apprehended, and neither his family nor his girlfriend looked for him. Although flight is not sufficient alone to support a conviction, it is a circumstance that raises an inference of guilt. *Carvajal v. State*, 529 S.W.3d 517, 520 (Tex. Crim. App. 1975).

When all of this evidence is viewed collectively, in the light most favorable to the verdict, as it must be, and in light of the reasonable inferences it supports, the evidence was more than sufficient to support the verdict. Accordingly, we overrule appellant's first issue.

## II. Admission of Surveillance Video Recordings

In his second issue, appellant contends the trial court abused its discretion in admitting video recorded from his Neighbor's surveillance system because he established the system malfunctioned.

### A. Standard of Review

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). Under that standard, we must uphold the trial court's ruling so long as it is within the zone of reasonable disagreement. *Id.*

### B. Discussion

At trial, the State offered video recordings from appellant's Neighbor's home surveillance system. Appellant objected to the admission of video recording because "it doesn't come in under

901 and under *Kelly*,[4] in that the evidence in the system hasn't been demonstrated to be working accurately or reliable, because it didn't record all the images moving in front of it." The trial court overruled the objections. Rule 901 concerns the authentication or identification of an item of evidence, which requires that the proponent produce evidence sufficient to support a finding that the item is what the proponent claims it is. TEX. R. EVID. 901.

The issue of authentication or identification arises whenever the relevancy of any evidence depends on its identity, source, or connection with a particular person, place, thing, or event. *Angleton v. State*, 971 S.W.2d 65, 70 (Tex. Crim. App. 1998). To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. TEX. R. EVID. 901(a). In the context of a video, it is possible to authenticate a recording even without the testimony of someone who witnessed what the video depicts or is familiar with the functioning of the recording device. *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018).

Appellant's Neighbor testified that he is in the business of installing commercial security systems, access control, and burglary alarm surveillance. He installed a video surveillance system at his home, located across the street from appellant's house. He positioned a camera so as to capture images of the area in front of his home and across the street. He programmed the camera to activate and record when it detected motion. The video has a time stamp generated by the surveillance system and was set to refresh from a government clock. After learning of the murder, the Neighbor reviewed the recorded footage during the early hours of June 20, 2015, and gave it to the police. We conclude the Neighbor's testimony was sufficient to meet the requirement that evidence be authenticated. TEX. R. EVID. 901.

---

[4] Appellant did not provide the trial court with a cite to the *Kelly* case he mentioned, and does not discuss *Kelly* on appeal. Further, there are hundreds of criminal cases in this State's jurisprudence with the name "Kelly" in the case name. Accordingly, we will not venture to determine which case appellant was referring to or further discuss his reference to the case insofar as its reference might intimate some argument apart from the one he suggested to the trial court.

–11–

Appellant questioned the accuracy and completeness of the recording because a vehicle is shown in part of the footage, later it is gone, but there is no video of the vehicle in the process of leaving. He claims his Neighbor's testimony suggests an explanation for the missing surveillance footage was that the system erred or someone edited it, and thus questions the accuracy and completeness of the recording. But the Neighbor did not testify that a more rational explanation for the missing footage was that the system erred or someone edited it. Rather, he gave affirmative responses to various speculative scenarios posed by defense counsel. The Neighbor also testified it is possible the car moved without its headlights on and thus was not detected by the camera and that the camera did not continuously record because it did not detect motion. The fact that the camera may not have captured all movement does not make the identified images it did capture inadmissible. Meanwhile, there is no affirmative evidence that the video images were altered by the neighbor, the police, or anyone else. Ultimately, appellant's complaints about the accuracy or completeness of the video bear on the weight of the evidence and not its admissibility. *See Manis v. State*, No. 05-08-00459-CR, 2009 WL 1815468, at *10 (Tex. App.—Dallas Jun. 26, 2009, no pet) (not designated for publication) (citing *Robinson v. State*, 739 S.W.2d 795, 802 (Tex. Crim. App. 1987)) (complaint that evidence is not "accurate" goes to weight, not admissibility). We overrule appellant's second issue.

## III. Jury Charge

### A. Spoliation

In his third issue, appellant urges the trial court erred by denying his request for a spoliation instruction concerning his Neighbor's surveillance recordings.

#### 1. Standard of Review

A review of alleged jury-charge error involves a two-step analysis. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). First, we must determine whether error actually

exists in the charge, and, second, if error does exist, whether sufficient harm resulted from the error to require reversal. *Id.* We review a trial court's decision not to submit an instruction in the jury charge for an abuse of discretion. *Wesbrook v. State*, 29 S.W.3d 103, 121–22 (Tex. Crim. App. 2000).

### 2. Discussion

The doctrine of spoliation refers to the improper destruction of evidence relevant to a case. *Buckeye Retirement Co., LLC v. Bank of Am., N.A.*, 239 S.W.3d 394, 401 (Tex. App.—Dallas 2007, no pet.). The duty to preserve evidence is limited to evidence that possesses an exculpatory value that was apparent before the evidence was destroyed. *White v. State*, 125 S.W.3d 41, 43–44 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). In addition to showing exculpatory evidence has been destroyed, there must be a showing of bad faith on the part of the State to warrant a spoliation instruction in a criminal proceeding. *Moody v. State*, 551 S.W.3d 167, 172 (Tex. App.—Fort Worth 2017, no pet.).

Appellant claims because there is a lack of a continuous streaming recording and because a vehicle appears in the first footage and not in subsequent footage, either the State failed to preserve evidence or allowed evidence that could be potentially relevant to be destroyed. First, appellant failed to show the alleged missing portions of video ever existed. *See id.* Second, he failed to show that the alleged missing footage was material in that it would have created a reasonable probability that the outcome of the trial would have been different. *See id.* Finally, appellant did not allege or show, if there was in fact relevant footage missing, that the State acted in bad faith. *See id.* In fact, appellant himself claimed the alleged missing footage was due to the State's "negligence." Accordingly, we conclude the trial court did not err in denying appellant's request for a jury instruction on spoliation of evidence. *Torres v. State*, 371 S.W.3d 317, 319–30 (Tex. App.—Houston [1st Dist.] 2012, pet.

ref'd) (spoliation instruction not required where defendant failed to establish potentially useful evidence destroyed in bad faith).  We overrule appellant's third issue.

### B.  Theory of Causation

In his fourth issue, appellant contends the trial court erred in instructing the jury on a blunt-force-trauma theory of causation.

The standard of review applicable to allegations of jury charge error is set forth *supra* in the section addressing appellant's third issue.

A trial court must deliver to a jury a written charge distinctly setting forth the law applicable to the case.  TEX. CODE CRIM. PROC. ANN. art. 36.14.  The court's instructions must apply the law to the facts adduced at trial.  *Gray v. State*, 152 S.W.3d 125, 127–28 (Tex. Crim. App. 2004).  A court should only include alternate theories of how a defendant committed an offense alleged in an indictment if the evidence presented at trial supports those theories.  *Sanchez v. State*, 376 S.W.3d 767, 774 (Tex. Crim. App. 2012).

Neither the manner nor means need be unanimously agreed upon by a jury.  *Ngo*, 175 S.W.3d at 746 n. 27 (noting that the jury must be unanimous on the gravamen of the offense of murder, which is causing the death of a person, but the jury need not be unanimous on the manner and means).  The jury need only unanimously agree that appellant caused the death of the complainant.  *Id.* at 746.

Appellant challenges the inclusion of a blunt-force-trauma theory of causation by asserting that the theory is inconsistent with the evidence at trial.  At trial, the State introduced the medical examiner's report, which concluded A.G died as a result of strangulation *and* blunt-force injuries to the head.  During the cross-examination of the medical examiner, he stated that the blunt-force trauma probably by itself would not have been fatal, but it definitely could have played a role in the death, and that strangulation could have been fatal by itself.

The trial court instructed the jury on two alternative manner and means by which appellant caused the death of A.G.: (1) strangulation, *or* (2) blunt force trauma.[5] At the charge conference, appellant objected to the inclusion of the blunt-force-trauma theory, arguing strangulation and blunt-force-trauma were not independent causes. The trial court overruled appellant's objection.

Although the medical examiner's testimony during cross-examination may have tempered his report about the blunt-force-trauma theory of causation, it did not eliminate blunt-force trauma as a possible contributing factor to A.G.'s death. Even assuming the trial court should have limited the instruction to strangulation, appellant cannot establish he suffered some harm as a result of the inclusion of the blunt-force-trauma theory.[6] *Sanchez*, 376 S.W.3d at 774.

In a jury charge alleging alternative theories, harm must be measured, at least in part, against the likelihood that the jury's verdict was actually based upon an alternative available theory of culpability not affected by erroneous portions of the charge. *Id.* at 775. When a jury returns a general guilty verdict on an indictment charging alternative methods of committing the same offense, the verdict stands if the evidence is sufficient to support a finding under any of the theories submitted. *Id.* The presence of overwhelming evidence of guilt plays a determinative role in resolving the issue and may be considered when assessing jury-charge error. *Id.*

Considering the entire record, we conclude that the jury charge, if erroneous, did not result in "actual harm" to appellant. The alternatives for convicting appellant required the jury to be convinced beyond a reasonable doubt that appellant caused the death of A.G., and, as we have

---

[5] More particularly, the court instructed the jury "Now, if you find and believe from the evidence beyond a reasonable doubt that MANUEL ROCHA, JR., hereinafter called Defendant, on or about the 20th day of June, 2015, in the County of Dallas, State of Texas, did unlawfully then and there intentionally cause the death of [A.G.], an individual, hereinafter called deceased, by strangling deceased with Defendant's hand, a deadly weapon or with Defendant's forearm, a deadly weapon or with an unknown object, a deadly weapon, the exact nature or description of which is unknown or unknowable to the grand jury or by inflicting blunt force injuries to deceased with an unknown object, a deadly weapon, the exact nature or description of which is unknown or unknowable to the Grand Jury, then you will find the defendant guilty of the offense of murder, as charged in the indictment, and you will make no finding in your verdict as to punishment."

[6] Appellant made a timely objection to the jury charge. Consequently, in addition to establishing error, appellant must demonstrate that he sufferance some harm to obtain reversal of the judgment. *Sanchez*, 376 S.W.3d at 774.

–15–

already concluded, the evidence at trial established this. In addition, the evidence proved at least one of the alternatives in the jury instruction that permitted a finding of guilt for murder for causing the death of A.G. The medical examiner explicitly testified that strangulation could have independently caused A.G.'s death. This evidence was sufficient to support appellant's conviction under the strangulation theory of causation. Accordingly, appellant was not harmed by the instruction. *Id.* at 776. We overrule appellant's fourth issue.

## IV.     Modification of the Judgment

In appellant's fifth issue, he contends that the judgment should be reformed to accurately reflect that he was found guilty of murder, not capital murder. The State agrees with appellant's contention and adds that the judgment should be reformed to show the statute for the offense is "19.02 Penal Code" and that the degree of offense is "1st degree felony" and to accurately reflect appellant's state identification number.

A judgment must reflect the offense for which a defendant was convicted and defendant's state identification number, if that number has been assigned at the time of the judgment. CRIM. art. 42.01 § 1(13), (28). The record shows the jury found appellant guilty of first-degree murder under section 19.02 of the penal code. The record further reflects that appellant's correct state identification number is TX08109220. The judgment, on the other hand, reflects that appellant was convicted of "capital murder," under section 19.03 of the penal code and that appellant's state identification number is TX0810922.

We have the authority to modify the trial court's judgment to make the record speak the truth. TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). Accordingly, we sustain appellant's fifth issue and the State's cross-issue and modify the trial court's judgment to reflect (i) appellant was convicted of the offense of murder, (ii) the statute of

–16–

offense is "19.02 Penal Code," (iii) the degree of offense is "1st degree felony," and (iv) appellant's State ID No: is TX08109220.

## CONCLUSION

As modified, we affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47

180161F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MANUEL ROCHA JR, Appellant

No. 05-18-00161-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 5, Dallas County, Texas
Trial Court Cause No. F15-75818-L.
Opinion delivered by Justice Schenck.
Justices Brown and Pedersen, III participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

Manuel Rocha Jr. was convicted of the offense of murder, the statute of offense is "19.02 Penal Code," the degree of offense is "1st degree felony," and Manuel Rocha Jr.'s State ID No: is TX08109220.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 3rd day of April, 2019.