**Opinion issued November 24, 2020**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

## NO. 01-19-00506-CR

———————————

**MIENYON DELINEIA LANE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 182nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1559165**

---

## MEMORANDUM OPINION

A jury convicted appellant, Mienyon Dilineia Lane, of murder, and the trial court assessed her punishment at 27 years' confinement. In two related issues on appeal, Lane contends that the trial court erred by (1) admitting, over her objection,

"any cell phone evidence, including cell site data, due to the failure to preserve all cell phone evidence," and (2) denying her request for a spoliation jury instruction, which she requested for the same reason. We affirm.

**BACKGROUND**

*Circumstances of the Murder*

On July 3, 2017, Passion Mitchell allowed Lane to drive her car, a silver Infiniti G35, so that Lane could drop her off at and pick her up from a sleep study at Memorial Hermann Hospital. Lane's friend, Lashay Smith, was also riding in the car. After dropping Mitchell off at the sleep study, Lane and Smith went to meet complainant, Anthony Johnson, picking up $30 worth of PCP for him on the way his apartment. The three smoked cigarettes dipped in PCP until the early morning hours of July 4, 2017. All three of them got in the car and drove around for about 30-40 minutes while smoking the cigarettes dipped in PCP.

Smith testified that, after returning to Johnson's apartment for a while, Lane and Johnson argued about the $30 Johnson owed Lane for the PCP. Lane and Smith then left Johnson's apartment. On the way, they stopped at a house; Lane went inside the house, while Smith stayed in the car. Smith testified that Lane came out of the house with a gun. Smith and Lane then returned to Johnson's apartment complex. Smith said she got out of the car and walked to a nearby bus stop, while Lane drove into the apartment complex. Smith testified that, while she

2

waited at the bus stop, Lane drove up to her again and asked to use her phone. After Lane used Smith's phone, Smith saw Lane return to the apartment complex. Surveillance video shows the Infiniti enter and leave the apartment complex multiple times between 6:30 and 6:45 A.M. Cell phone location data evidence corroborates much of Smith's testimony about Lane's and her movements on the night of the offense.

Around 10:30 A.M., Johnson's girlfriend arrived at his apartment and found him dead from a gunshot wound to the chest.

*Cell Phone Evidence*

The trial included several types of information obtained from the cell phones of the parties involved, including data regarding a cellphone's location obtained through "pings" on certain cell phone towers and data extracted from cell phones. When examining data extracted from cell phones, there are two types: physical and logical. A physical extraction has the potential to gather more information, even information that has been deleted from the phone. However, because of a backlog in the police's high-tech crime unit, a physical extraction would require the owner of the phone to surrender it for a few weeks. During the investigation, only a logical extraction was done on Smith's phone. Police explained that they were afraid that if they sought to perform the more detailed physical extraction, which could take several weeks, Smith would withdraw her consent to the search.

3

Therefore, there was no information collected regarding any data that might have deleted from Smith's cell phone. Lane requested *all* cell phone evidence—including the cell phone location data—be suppressed, or, in the alternative, for a spoliation instruction to be given to the jury because a more extensive, physical extraction was not done on Smith's cell phone. Both requests were denied by the trial court.

## MOTION TO SUPPRESS AND SPOLIATION INSTRUCTION

In related issues one and two, Lane contends that the trial court abused its discretion in denying her motion to suppress the admission of "any cell phone evidence, including cell site data, due to the failure to preserve all cell phone evidence and the trial court also erred in denying Lane's related spoliation instruction." Specifically, she argues that, because the police had Smith's cell phone in their possession, they should have preserved any evidence that could have been found on it.[1] Lane argues that "[b]ecause of the lack of detective work done to obtain possible exculpatory information from phones obtained by police, . . . that

---

[1] The record shows that police conducted a "logical" data extraction from all the phones in its possession, which did not include any deleted data that a "physical" data extraction would have provided. At trial, Lane acknowledged that cell tower site data was obtained pursuant to search warrants issued to the cell phone service providers, but argued that all cell phone data—including the cell tower site data obtained pursuant to a warrant—should have been excluded because a more thorough "physical" data extraction could have been done on the phones, but was not.

4

all cell phone data [should] be suppress[ed], or, in the alternative, that a spoliation charge be included in the jury charge."

## *Standards of Review*

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). A trial court abuses its discretion when its decision is so clearly wrong as to lie outside the zone of reasonable disagreement. *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992). We give almost total deference to the trial court's findings of fact, and, in the absence of explicit findings, we presume the trial court made whatever appropriate implicit findings are supported by the record. *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex. Crim. App. 2000). However, we review de novo the application of the relevant law to the facts. *Id.* at 327. Likewise, when the facts are undisputed and we are presented with a pure question of law, de novo review is proper. *Oles,* 993 S.W.2d at 106. We must uphold the trial court's ruling if it is correct under any theory of law applicable to the case. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005). Because Lane's complaint is premised on a violation of her due-process rights, if we find error, we apply the constitutional-error harm standard. *See Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001). Under that standard, "[i]f the appellate record in a criminal case reveals constitutional error that is subject to a harmless error review,

5

[we] must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a).

We review a complaint of jury-charge error under a two-step process, considering first whether error exists. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If error exists, we then analyze that error for harm under the procedural framework of *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984). An appellant is entitled to relief for a requested, but erroneously denied instruction only if the record shows that she suffered "some harm." *See Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). Under this standard, the harm must be actual, not merely theoretical. *Id.*

### Applicable Law

The due-process clause of the United States Constitution provides a limited protection to criminal defendants when authorities fail to preserve potentially useful evidence in a criminal prosecution. *Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988). The due-course-of-law provision of the Texas Constitution provides no greater protection than the federal Due Process Clause regarding the State's loss or destruction of evidence or failure to preserve evidence in a criminal prosecution. *Higginbotham v. State*, 416 S.W.3d 921, 925–26 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

6

The due-process protection for a failure to preserve evidence that could have been subjected to tests, the results of which might have exonerated the defendant, is much more limited than the failure of the prosecution to turn over existing exculpatory evidence. *Ex parte Napper*, 322 S.W.3d 202, 229 (Tex. Crim. App. 2010) (citing *Youngblood*, 488 U.S. at 57, 109 S. Ct. at 337); *see also Moody v. State*, 551 S.W.3d 167, 171 (Tex. App.—Fort Worth 2017, no pet.). The narrower protection is appropriate because of the "treacherous task" that courts face in "divining the import of materials whose contents are unknown and, very often, disputed." *Napper*, 322 S.W.3d at 229.

Therefore, "when the destruction of potentially useful evidence is at issue, the defendant must show 'bad faith' on the part of the State in destroying the evidence in order to show a violation of due process." *Id.* "This rule confines the police's obligation to preserve evidence 'to that class of cases [in which] the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant.'" *Id.*

> "Bad faith" is more than simply being aware that one's action or inaction could result in the loss of something that is recognized to be evidence. As the cases we have discussed show, bad faith entails some sort of improper motive, such as personal animus against the defendant or a desire to prevent the defendant from obtaining evidence that might be useful. Bad faith cannot be established by showing simply that the analyst destroyed the evidence without thought, or did so because that was the common practice, or did so

7

because the analyst believed unreasonably that he was following the proper procedure.

*Id.* at 238; *see also Guzman v. State*, 539 S.W.3d 394, 402 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (quoting *Napper* and stating that "[b]ad faith requires a showing of 'some sort of improper motive, such as personal animus against the defendant or a desire to prevent the defendant from obtaining evidence that might be useful'").

### *Analysis*

Here, Lane admits that she cannot show the required "bad faith."[2] Nevertheless, she argues that, because "technology has changed since the decision in *Arizona v. Youngblood*," the standard that requires a showing of "bad faith" by police officers "should be revisited by not only the United States Supreme Court but also the Texas Courts." Lane proposes that the State's failure to collect or

---

[2]  At the motion to suppress hearing, defense counsel stated:

> Now, I will say the case law requires me to prove bad faith. And I don't believe bad faith exists here. I concede that completely. I believe that just as Detective Brown testified, this is a matter of officers with a lot of work, inadequate resources, equipment that perhaps doesn't function properly, a number of things. However, [Lane] is on trial for murder, a charge that potentially carries life in prison. So, [Lane] should not be punished in her defense because there is [sic] inadequate resources or a backlog of cases. That, again, violates every standard of fundamental fairness that I can conceive of.

preserve evidence—even without a showing of bad faith—should create an inference that the absent evidence would favor Lane.[3]

Expressing no opinion regarding the analysis proposed by Lane, we are nevertheless bound by the precedent of the Texas Court of Criminal Appeals. *See Purchase v. State*, 84 S.W.3d 696, 701 (Tex. App.—Houston [1st Dist.] 2002, pet. ref d) ("As an intermediate court of appeals we are bound by the decisions of our state's highest criminal court."). The Court of Criminal Appeals has held that when the issue of spoliation concerns potentially useful evidence, the defendant must show that the State lost or destroyed the evidence in bad faith. *Napper*, 322 S.W.3d at 229. We cannot and will not accept Lane's invitation to disregard binding precedent from the Texas Court of Criminal Appeals.

Because Lane failed to show that police acted in bad faith in not collecting a "physical" extraction of data from the cell phones in its possession, the trial court did not abuse its discretion in denying her motion to suppress or err in denying her requested spoliation instruction.

---

[3]     Lane's requested jury charge provided as follows:

> The State has a duty to collect and preserve evidence. The fact that the State lost or failed to preserve evidence does not in and of itself require you to acquit the Defendant. It is, however, one factor for you to consider in your deliberations. If after consideration of all the proof you find that the State failed to gather or preserve evidence, the contents or quality of which are at issue and the production may or may not have been a benefit to the Defendant, you may infer that the absent evidence would be favorable to the Defendant.

Accordingly, we overrule issues one and two.

## CONCLUSION

We affirm the trial court's judgment.


       Peter Kelly
       Justice

Panel consists of Chief Justice Radack and Justices Lloyd and Kelly.

Do not publish. TEX. R. APP. P. 47.2(b).