**Opinion issued November 26, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00547-CR

_____

**JAMES ERIC HIGGINBOTHAM, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 3**
**Harris County, Texas**
**Trial Court Case No. 1773747**

---

## OPINION

Appellant James Eric Higginbotham was charged with misdemeanor driving while intoxicated (DWI). The jury found Higginbotham guilty of DWI, and the trial court sentenced him to thirty days' confinement. On appeal, Higginbotham argues that the trial court erred in denying his motion to suppress a video recording

of him performing field sobriety tests in the police station's DWI room on the night of his arrest. Higginbotham contends the DWI room video should have been suppressed because the State failed to preserve a different video recording—one that was captured by Officer Boles's in-car camera and showed what transpired at the scene of Higginbotham's arrest. We affirm.

## Background

Officer Boles of the La Porte Police Department was the State's key witness at trial. He testified that he pulled Higginbotham over at 2:00 a.m. after his license plate reader alerted him that a possible traffic warrant was associated with Higginbotham's car. Higginbotham smelled of alcohol, slurred his speech, had red watery eyes, and admitted that he drank four twelve-ounce beers at Kemah that night.

Officer Boles did not conduct any field sobriety tests (FSTs) at the scene. Instead, he arrested Higginbotham for outstanding traffic warrants and suspicion of DWI and drove him to the police station, which was five minutes away. In the station's DWI room, Boles had Higginbotham perform video-recorded FSTs.

During trial but outside the presence of the jury, Higginbotham moved to suppress the results of the horizontal gaze nystagmus (HGN) test on the basis that it was not properly administered and, therefore, was unreliable. During the hearing on that motion, Officer Boles testified that the scene video had been recorded by

2

his in-car camera, but that it was not preserved because the department's policy only required him to submit one video—the in-station video that recorded the FSTs—to the District Attorney's office.

The next morning, Higginbotham orally supplemented his motion to suppress and urged the trial court to suppress the video of Higginbotham performing the FSTs in the DWI room on the basis that the State failed to preserve the scene video recorded by Officer Boles's in-car camera. Outside the jury's presence, Officer Boles testified that the scene video was no longer available. He acknowledged that the scene video would have shown that Higginbotham did not drive erratically and that Higginbotham was able to get out of his car without stumbling. The trial court denied the motion to suppress the DWI room video.

In the jury's presence, Officer Boles testified about the missing scene video. Officer Boles told the jury that his in-car camera recorded the traffic stop, but that the scene video was not preserved because, consistent with department policy, he only requested the video custodian to preserve the in-car videos in DWI cases in which FSTs were conducted at the scene. Thus, he "did not request any special treatment for the in-car video due to the fact that the stop was predominantly the warrant stop and [the] DWI investigation was conducted predominantly at the station." And, in accordance with the La Porte Police Department's policy, videos from the in-car cameras were destroyed after 90 days.

3

On cross-examination, Officer Boles acknowledged that the scene video showed that Higginbotham did not exhibit certain signs of intoxication. Specifically, Officer Boles admitted that Higginbotham was not driving erratically, and that the scene video would have captured about 30 seconds of Higginbotham driving. Officer Boles also admitted that Higginbotham did not fumble with his wallet, stumble out of his car, or lean on his car for support. Officer Boles did tell the jury, however, that the scene video recorded his own audible statements to the effect that Higginbotham had slurred speech, red, watery eyes, and smelled of alcohol at the scene.

## Discussion

Higginbotham contends that the trial court abused its discretion in refusing to suppress the DWI room video because the State destroyed the scene video, which contained valuable evidence material to Higginbotham's defense. Higginbotham asserts the scene video's destruction violates the Due Course of Law Clause of the Texas Constitution, which Higginbotham argues affords him greater protection than federal law.

### A.    Standard of Review

"In review of a trial court's ruling on a motion to suppress, an appellate court must apply a standard of abuse of discretion and overturn the trial court's ruling only if it is outside the zone of reasonable disagreement." *Martinez v. State*,

348 S.W.3d 919, 922 (Tex. Crim. App. 2011). We use a bifurcated standard of review, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but applying a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations. *Id.* at 922-23. "[W]hen the trial court fails to file findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (en banc) (citing *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex. Crim. App. 2000)).

## B. Applicable law

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97 (1963). To find reversible error under *Brady*, the appellant must show that (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to him; and (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed the outcome

5

of the trial would have been different. *Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011).

"Incorporated into the third prong, materiality, is a requirement that [the] defendant must be prejudiced by the State's failure to disclose the favorable evidence." *Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006) (en banc). To be material, missing "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 2534 (1984). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002) (quoting *United States v. Agurs*, 427 U.S. 97, 109–10, 96 S.Ct. 2392, 2400 (1976)); *Hebert v. State*, 836 S.W.2d 252, 254 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (to establish materiality, appellant must show more than that lost evidence might have been favorable). "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the

outcome." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383 (1985).

## C.    Analysis

On appeal, Higginbotham argues that the State's failure to preserve the scene video violates *Brady* and the Due Course of Law Clause of the Texas Constitution, which Higginbotham contends affords him greater protection than federal law. *See* U.S. CONST. amends. V, XIV, § 1; TEX. CONST. art. I, § 19. Higginbotham's claim that Texas law affords him greater protection than federal law is based on *Pena v. State*, 166 S.W.3d 274 (Tex. App.—Waco 2005) ("*Pena I*"), *vacated*, 191 S.W.3d 133, 138 (Tex. Crim. App. 2006) ("*Pena II*"), which he urges us to follow.

### 1.    Texas law affords Higginbotham no greater protection than federal law.

The *Pena* case has produced numerous opinions, but the ones on which Higginbotham relies have been vacated and, therefore, are not authoritative. Pena was charged with possession of 24 pounds of marijuana, and his defensive theory was that the substance was not marijuana. *Pena I*, 166 S.W.3d at 276–77. The trial court granted Pena's motion to independently examine the substance, but the substance had been destroyed. *Id.* at 277. Pena then moved to suppress a laboratory report confirming that the substance was in fact marijuana, and the trial court denied his motion. *Id.*

7

The Waco Court of Appeals observed the holding in *Arizona v. Youngblood*—that if destroyed evidence is merely "potentially useful" rather than "material and exculpatory,"—its destruction does not violate the federal Due Process Clause unless the accused shows that the State acted in bad faith. *Id.* at 277–78. But it went on to hold that Texas's Due Course of Law Clause provided the appellant greater protection than federal law, and concluded that the Texas Constitution requires the State to preserve all evidence that has "apparent exculpatory value," which includes exculpatory evidence and evidence that is only potentially useful to the defense. *Id.* at 281. The Court of Criminal Appeals vacated and remanded, holding that because the court of appeals acted *sua sponte*, it "erred in failing to give the parties the opportunity to brief the issue." *Pena II*, 191 S.W.3d at 134.

On remand, the court of appeals again held that the Due Course of Law Clause provides greater protection than the federal Due Process Clause. *See Pena v. State*, 226 S.W.3d 634, 651 (Tex. App.—Waco 2007) ("*Pena III*"), *rev'd on other grounds*, 285 S.W.3d 459, 465 (Tex. Crim. App. 2009) ("*Pena IV*"). The Court of Criminal Appeals reversed again, holding that the appellant failed to preserve his claim under the Texas Constitution. *Pena IV*, 285 S.W.3d at 461.

On remand, the court of appeals addressed Pena's separate complaint that he was denied due process under *Brady* because the State failed to disclose the audio

portion of the video from the arresting officer's in-car camera. *Pena v. State*, No. 10-03-00109-CR, 2010 WL 2306699, at *1 (Tex. App.—Waco June 9, 2010) (*Pena V*), *rev'd on other grounds*, 353 S.W.3d 797, 815 (Tex. Crim. App. 2011) (reversed and remanded for new trial after holding evidence was material under *Brady*) (*Pena VI*). The Court of Criminal Appeals held the audio recording was both favorable and material under *Brady* and reversed and remanded for a new trial on that basis. But this holding was based on federal, not state, law. Accordingly, none of the *Pena* opinions having precedential value support Higginbotham's contention that Texas's Due Course of Law Clause affords him greater protection than federal law.

Additionally, other Texas courts of appeals, including the Fourteenth, have held that "the Due Course of Law Clause does not provide a greater level of protection than the Due Process Clause regarding the State's loss or destruction of evidence in a criminal prosecution." *State v. Vasquez*, 230 S.W.3d 744, 750 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *see also Jackson v. State*, 50 S.W.3d 579, 588–89 (Tex. App.—Fort Worth 2001, pet ref'd); *Salazar v. State*, 185 S.W.3d 90, 92 (Tex. App.—San Antonio 2005, no pet.). We agree and hold that Texas's Due Course of Law Clause does not afford Higginbotham greater protection than the federal Due Process Clause. *See Vasquez*, 230 S.W.3d at 751.

9

Accordingly, we conclude that Higginbotham is entitled to relief only to the extent it is available under federal law.

## 2. The trial court's refusal to suppress the DWI room video does not violate federal law.

To satisfy the third element under *Brady*, the withheld evidence must be material. Evidence is material under *Brady* if there is a reasonable probability that the outcome of the trial would have been different if the evidence had been disclosed.[1] *Pena IV*, 353 S.W.3d at 809. When evaluating whether the materiality standard is satisfied, the strength of the exculpatory evidence is balanced against the evidence supporting the conviction. *Id*. at 812.

Here, the State was required to prove beyond a reasonable doubt that Higginbotham did not have "the normal use of mental or physical faculties by reason of the introduction of alcohol . . . into the body." *See* TEX. PEN. CODE ANN. § 49.01(2)(A) (West Supp. 2013). Higginbotham contends the scene video would have been favorable for him because it showed him behaving normally before he

---

[1] If the evidence is not material and a defendant instead bases a federal due process challenge on a state's destruction of "potentially useful evidence," then a different test applies—the defendant must demonstrate that the state destroyed the evidence in bad faith. *Illinois v. Fisher*, 540 U.S. 544, 547–48, 124 S.Ct. 1200, 1202 (2004); *Arizona v. Youngblood*, 488 U.S. 51, 57–58, 109 S.Ct. 333, 337 (1988). Here, nothing in the record indicated the State acted in bad faith, and Higginbotham concedes this. Therefore, Higginbotham cannot prevail under a theory that the scene video was "potentially useful evidence" under *Youngblood*, as opposed to "favorable" and "material" under *Brady*. *Youngblood*, 488 U.S. at 58, 109 S.Ct. at 337; *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97 (1963).

10

was placed in the unfriendly environment of the DWI room. Having considered the strength of the scene video against the evidence supporting the conviction, we conclude that the scene video did not meet *Brady's* materiality prong.

Officer Boles testified about the content of the scene video. He agreed that the scene video showed some indications that Higginbotham was not intoxicated. Specifically, Officer Boles testified that the scene video would have shown that Higginbotham was not driving erratically, did not stumble out of his car or lean on it for support, did not fumble with his wallet, and was able to remove his driver's license from his wallet and give it to Officer Boles without any problem. However, Officer Boles also testified that the scene video recorded his own audible comments to the effect that Higginbotham smelled of alcohol, had red, watery eyes, and slurred his speech.[2] The evidence regarding the missing scene video thus shows that the scene video would have been somewhat—but not entirely—helpful to Higginbotham.

The evidence supporting Higginbotham's conviction, on the other hand, was strong. First and foremost, Officer Boles testified that Higginbotham admitted that he drank four twelve-ounce beers in Kemah on the night of his arrest.

Second, Officer Boles gave extensive and detailed oral testimony about Higginbotham's inability to perform the FSTs. During the walk and turn test,

---

[2] The charge instructed the jury that it may "consider the destruction of the La Porte scene video in [their] deliberations."

11

Higginbotham was unable to balance, could not stand with one foot's heel directly in front of the other foot's toes, missed steps, and turned the wrong direction. During the one leg stand, Higginbotham signified the loss of the normal use of his physical faculties because he could not raise one foot six inches while counting and keeping his legs straight and hands at his sides. Higginbotham put the raised foot down multiple times, swayed, and used his arms for balance during the entire test. Likewise, during the "finger to nose" test, Higginbotham swayed, failed to follow instructions, and missed his nose several times.

Finally, the jury saw Higginbotham perform these tests in the DWI room video, after which Officer Boles testified that he could hear Higginbotham slurring his speech in the DWI room video.

Balancing the slight exculpatory value of the scene video against the evidence supporting the conviction, we hold that there was not a "reasonable probability" that that the outcome of the trial would have been different had the jury seen the scene video. Accordingly, the scene video was not material under *Brady*, and the trial court did not abuse its discretion in denying Higginbotham's motion to suppress. *See Barre v. State*, 826 S.W.2d 722, 725 (Tex. App.— Houston [14th Dist.] 1992, pet. ref'd.) (destroyed tape recording was not material under *Brady* where it "cut both ways" and worked both to appellant's benefit and detriment); *Mahaffey v. State*, 937 S.W.2d 51, 53 (Tex. App.—Houston [1st Dist.]

1996, no pet.) (lost video recording not material merely because DWI defendant argued video might have had exculpatory value and officer did not remember appellant acting outrageously); *Williams v. State*, 906 S.W.2d 58, 61 (Tex. App.—Tyler 1995, pet. ref'd) (destroyed video not material where it may have shown some inconsistencies in arresting officer's testimony and record did not suggest State destroyed tape in bad faith).

We overrule Higginbotham's sole point of error.

### Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Publish.   TEX. R. APP. P. 47.2(b).