**Opinion issued July 12, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00870-CR

————————————

**KEVIN CHARLES HALL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Case No. 1426382**

---

## MEMORANDUM OPINION

Kevin Charles Hall was convicted of assault on a family member, second offense, enhanced by prior felony convictions for delivery of a controlled substance. *See* TEX. PENAL CODE ANN. §§ 12.42(d), 22.01(a)(1), (b)(2)(A) (West 2011 & Supp. 2015). The jury assessed his punishment at 75 years' imprisonment.

Hall appeals, contending that the trial court erred by (1) denying a motion for mistrial after the complainant testified that she believed Hall's death threat made during the course of the incident because Hall had "already beaten her" a lot of times, (2) admitting testimony that Hall called the complainant to beg her not to testify at trial, and (3) denying Hall a jury instruction on spoliation due to the State's inability to produce photographs of the complainant's injuries taken on the day of the incident. We affirm.

## BACKGROUND

Hall brought his wife, Corterra Payton, to the parking lot of a bar near the Southwest Freeway to help him detail cars. Hall and Payton drank alcoholic beverages as they worked, and they began to argue. The owner of the bar asked Hall and Payton to leave. Payton refused to leave with Hall, whereupon Hall dragged Payton to his car. Payton fell to the ground, and Hall continued to drag her on the ground toward the car. Hall threw Payton in the back seat, punched her in the face several times, and shut her inside the car. The car's back seat did not have working interior door handles and could not be opened from the inside. Yelling for help, Payton attempted to free herself by rolling down the window and opening the door from the outside. Hall stopped the car and punched Payton in the face several more times.

Hall then continued driving and turned onto Bissonnet Street. Payton again attempted to escape. Hall again responded by beating her and shutting her in the back seat. Because Payton continued to yell for help, Hall told her that he was "going to take [her] to the bayou and kill [her]." Hall drove down to the bayou and again went to the back seat. He first punched Payton, and then started to choke her. For several minutes, Hall gripped Payton's neck as she gasped for air. Eventually, Hall released Payton, left her in the back seat, and resumed driving. As she and Hall passed a fire station on Bissonnet, Payton jumped out of the moving car. Payton ran toward the fire station, where firefighters stood outside. Several firefighters heard Payton screaming and saw her jump from the car. Payton was bleeding from the mouth. The firefighters called the police, and HPD Officer B. Sinclair responded.

When Sinclair arrived at the fire station, she found that Payton, who was "frantic and crying," had a swollen eye, a bloody mouth, and cuts and bruises on her hands. Half of Payton's hair weave was torn out. Payton recounted the incident to Officer Sinclair, who took pictures of Payton's injuries with her cell phone. After interviewing Payton and taking her to a women's shelter, Sinclair handed the investigation over to HPD Sergeant G. Shepherd, a specialist in domestic violence cases. At trial, Sinclair testified that she sent Shepherd her photos via HPD's computer photo management system. Shepherd, however,

denied receiving Sinclair's photos. The next day, Shepherd interviewed Payton at the district attorney's office, taking his own photos of Payton's injuries.

At trial, Payton testified for the State. The State also called Officer Sinclair and Sergeant Shepherd, who testified about their investigation, and a third police officer, who testified that he overheard Hall call Payton on a speaker phone to beg her not to testify. Hall contended that Payton had suffered her injuries in a fight at a party the night before or as a result of jumping out of Hall's car while intoxicated. The jury found Hall guilty of assault.

## DISCUSSION

### I. Denial of Motion for Mistrial

When asked whether she took Hall's death threat seriously, Payton responded that she did because Hall had "already beat [her] a lot of times." Hall objected as to relevance and moved for a mistrial. The trial court sustained the objection and asked the State to rephrase the question, but it denied the motion for mistrial. Hall contends on appeal that it was error to deny his motion for mistrial after the jury heard that Hall "already beat" Payton because it is extraneous offense evidence.

### A. Standard of Review and Applicable Law

We review a trial court's denial of a mistrial under an abuse of discretion standard. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). In

4

determining whether a witness's improper reference to an extraneous offense requires a mistrial, we consider (1) the severity of the underlying misconduct, (2) any curative measures adopted, and (3) the certainty of the conviction absent the misconduct. *See id.* at 700. We conduct this inquiry with reference to the particular facts of the case. *See Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

Rule 404 of the Rules of Evidence prohibits the use of extraneous crimes or bad acts as character evidence against the accused. TEX. R. EVID. 404(b)(1). Evidence of extraneous offenses may, however, be admitted for other purposes, such as to prove motive, intent, or plan. TEX. R. EVID. 404(b)(2); *Wilson v. State*, 473 S.W.3d 889, 900 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (citing *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990)). Evidence of extraneous offenses may also be admissible to rebut defensive theories. *Wilson*, 473 S.W.3d at 900. Crimes or bad acts that are charged in the indictment are not extraneous and are not subject to exclusion under Rule 404. *See* TEX. R. EVID. 404(b); *Segundo v. State*, 270 S.W.3d 79, 87 (Tex. Crim. App. 2008) (observing that *extraneous* bad acts are excluded, because the defendant is only to be tried for the offense charged). Further, the erroneous admission of an extraneous offense is

cured by the admission without objection of the offense elsewhere in the record. *See Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (quoting *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003)) ("An error [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection.").

## B. Analysis

Payton testified she had attempted to escape from Hall's car twice and sustained beating from Hall before Hall threatened to take her to the bayou and kill her. When asked why she took Hall's threat seriously, Payton explained that Payton "done already beat [her] a lot of times." Hall objected to this remark on the ground that it was irrelevant. The trial court sustained his objection. However, when Hall asked the trial court to instruct the jury to disregard Payton's statement, the court asked the State to rephrase its question. Hall moved for a mistrial, which the trial court denied. The State then asked Payton, "[Hall] had already assaulted you multiple times that day, right?" After Payton confirmed that Hall had beaten her in the car before he threatened to kill her, the State moved away from the subject of these beatings.

Hall has not demonstrated that Payton's testimony referred to beatings that were extraneous offenses. In context, Payton's testimony referred to the course of Hall's multiple beatings beginning after their argument in the bar parking lot and

before he threatened to kill her, not attacks from before that time. The beatings that occurred before Hall threatened to kill Payton were alleged in the indictment and thus are not extraneous offenses subject to exclusion under Rule 404. *See* TEX. R. EVID. 404(b); *Segundo*, 270 S.W.3d at 87. The State's question was directed to Payton's state of mind in connection with the death threat. After it sustained the relevance objection, the trial court requested that the State rephrase to clarify the context in its questioning, and the State complied. Thus, the trial court cured any impression the jurors may have had that Payton was referring to extraneous offenses. Payton clarified that Hall had already assaulted her multiple times that day. The trial court therefore acted in its discretion when it denied Hall's motion for mistrial.

## II.   Admission of Hall's Statement

Hall contends that the trial court erred in admitting testimony that he called Payton to ask her not to testify. He contends that the testimony's potential for unfair prejudice outweighed its probative value and that it was inadmissible character evidence.

### A.   Standard of Review and Applicable Law

We review the trial court's evidentiary rulings for abuse of discretion. *See Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009); *Montgomery v. State*, 810 S.W.2d 372, 380, 391 (Tex. Crim. App. 1990). A trial court abuses its

7

discretion if its decision is outside the zone of reasonable disagreement or if it acts without reference to guiding rules or principles. *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001); *Montgomery*, 810 S.W.2d at 391.

Under Texas Rule of Evidence 403, evidence is relevant if it makes more or less probable a fact of consequence to the litigation. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007) (citing *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006)). Evidence is unfairly prejudicial if it tends to suggest a decision on an improper basis rather than on the evidence adduced at trial. *Casey*, 215 S.W.3d at 879–80. For example, evidence may be unfairly prejudicial if it tends to arouse the jury's hostility or sympathy for one side without regard to its logical probative value. *Id.*

## B.    Analysis

After Hall was arrested for assaulting Payton, he called her repeatedly, begging her not to testify against him. While Payton was visiting an HPD station, she received one of these harassing phone calls. Payton put Hall on speaker phone. Officer T. Vinson-Watson testified that she heard Hall say: "Baby, baby, please don't come to court. These people are trying to hang me. Please, baby, don't come to court."

Hall's defensive theory at trial was that Payton had suffered her injuries in a fight at a party the night before or from jumping out of Hall's moving car while

8

intoxicated. A jury could reasonably infer from Hall's plea for Payton not to testify that Payton's truthful testimony would implicate Hall and discredit his account of a fight at the party or accidental injury. *See* TEX. R. EVID. 401 ("Evidence is relevant if it has any tendency to make a fact more or less probable . . . and the fact is of consequence in determining the action."); *Casey*, 215 S.W.3d at 879 (basing probative value, in part, on "how strongly [an item of evidence] serves to make more or less probable the existence of a fact of consequence to the litigation"). Because the phone call corroborated Payton's testimony and discredited Hall's alternative account, the phone call had probative value. *See Gigliobianco*, 210 S.W.3d at 641.

Hall suggests that the phone call was an extraneous bad act, the admission of which violated Rule 404's exclusion of extraneous offense or bad act evidence for character purposes, because it violated a protective order. The testimony, however, did not refer to the protective order. Vinson-Watson's testimony does not otherwise suggest that Hall committed any crime or bad act beyond the one for which he was standing trial. We hold that the trial court acted within its discretion in admitting Hall's statement to Payton. *See* TEX. R. EVID. 404; *Segundo*, 270 S.W.3d at 87.

## III. Spoliation Instruction

Hall finally contends that the trial court erred in refusing a jury instruction on spoliation of evidence because the State failed to produce the cell phone photographs.

### A. Standard of Review and Applicable Law

In analyzing a jury-charge issue, we first determine whether error exists. *See Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1984) (op. on reh'g); *Tottenham v. State*, 285 S.W.3d 19, 30 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). If we find error, then we consider whether the error was harmful under the appropriate standard. *Tottenham*, 285 S.W.3d at 30; *see also Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008) ("The failure to preserve jury-charge error is not a bar to appellate review, but rather it establishes the degree of harm necessary for reversal.").

When charging the jury, a trial court must instruct it on the "law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). The trial court is not required to instruct the jury on defensive issues sua sponte, even if they are raised by the evidence. *Jackson v. State*, 288 S.W.3d 60, 63 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (citing *Oursbourn v. State*, 259 S.W.3d 159, 179 (Tex. Crim. App. 2008)).

The State has no duty to preserve evidence unless its exculpatory value is apparent at the time of its destruction. *California v. Trombetta*, 467 U.S. 479, 488–89, 104 S. Ct. 2528, 2534 (1984); *White v. State*, 125 S.W.3d 41, 43 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). The defendant claiming spoliation of evidence must show that the lost evidence was favorable and material to his defense, such that if it were disclosed, there is a reasonable probability of a different result. *See Higginbotham v. State*, 416 S.W.3d 921, 924 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Further, to be entitled to relief, the defendant must show that in failing to preserve the material and favorable evidence, the State acted in bad faith. *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008) (citing *Arizona v. Youngblood*, 488 U.S. 51, 57–58, 109 S. Ct. 333, 337–38 (1988)).

### B.    Analysis

Hall has not established that the State acted in bad faith in failing to produce Sinclair's photos; rather, his argument focuses on the officer's negligence in failing to make a back-up of the photos. A defendant must show that the State acted in bad faith to be entitled to relief. *See White*, 125 S.W.3d at 44. Sinclair recalled that immediately after she left the fire station on Bissonnet, she returned to the police station. There, Sinclair transferred the photos from her phone to a special computer program for management of photographic evidence, and sent the photos

to Sergeant Shepherd. Sinclair testified that this was consistent with HPD protocol for preserving photographic evidence. Absent evidence of bad faith, a spoliation instruction is not required. *See Youngblood*, 488 U.S. at 57–58, 109 S. Ct. at 337–38; *Neal*, 256 S.W.3d at 280.

Additionally, Hall has not demonstrated that the photos were favorable to his defense. He alleges in his brief that the photos would establish that Payton's injuries were a day old at the time she jumped out of Hall's car, consistent with a fight that Payton had been in the night before the incident, and not her more recent altercation with Hall. Officer Sinclair described Payton's appearance as "frantic" and disheveled, noting that she was bleeding from the mouth and that she had blood under her eye, conditions consistent with fresh injuries. Because Hall cannot show a reasonable probability of a different result if the photos had been preserved, the trial court did not err in denying him a spoliation instruction. *See Trombetta*, 467 U.S. at 488–89, 104 S. Ct. at 2534; *Higginbotham*, 416 S.W.3d at 924; *White*, 125 S.W.3d at 43.

**CONCLUSION**

We affirm the judgment of the trial court.

                                                Jane Bland
                                                Justice

Panel consists of Justices Higley, Bland, and Massengale.

Do not publish.  TEX. R. APP. P. 47.2(b).