

# NUMBER 13-20-00080-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**SHAWN DOUGLAS RISENER,**                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                        **Appellee.**

---

## On appeal from the 19th District Court of of McLennan County, Texas.

---

## MEMORANDUM OPINION

### Before Justices Benavides, Hinojosa, and Silva
### Memorandum Opinion by Justice Silva

Appellant Shawn Douglas Risener appeals his conviction of six counts of indecency with a child by contact, a second-degree felony.[1] *See* TEX. PENAL CODE ANN.

---

[1] This case is before this Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

§ 21.11. By what we construe as two issues, Risener argues the trial court erred in denying his (1) challenges for cause during jury selection and (2) motion for new trial. We affirm.

## I.   BACKGROUND

In October 2017, Risener was indicted on all six counts. The offenses were alleged to have occurred between 1994 and 1996. He pleaded not guilty and proceeded to trial.

### A.   Voir Dire

During voir dire, the trial court explained the range of punishment for indecency with a child as charged and the requirement that all jurors must be able to consider the full range of punishment. *See id.* § 12.33(a) (providing that the punishment for an individual adjudged guilty of a second-degree felony is "imprisonment in the Texas Department of Criminal Justice for any term of not more than 20 years or less than 2 years"). Only nine venire members indicated that they could not consider the full range of punishment. When the State proposed the same question, ten venire members indicated they could not. Defense counsel then asked whether the panel members could "honestly give fair consideration to a sentence as low as two years and recommend probation?" Unlike the trial court and State, the defense counsel asked each individual venire member to answer either "Yes" or "No" to the question. Forty-four out of sixty-two members of the panel responded, "No." Defense counsel did not seek any elaboration.

The State then requested and was granted an opportunity to rehabilitate the panel. Following a reiteration of the full range of punishment, the State asked the panel whether they could "consider probation when . . . considering the offense of Indecency with a Child by Contact?" Like defense counsel, the State asked each individual venire member to

2

respond in "Yes" or "No" format. Several venire members, including members fifteen, seventeen, twenty, twenty-three, twenty-five, thirty-three, thirty-four, thirty-six, forty-one, forty-three, forty-seven, and fifty-seven changed their response to "Yes."

The State and Risener jointly agreed to strike twenty-five venire members for cause. Risener also argued that twelve venire members that changed their responses— numbers fifteen, seventeen, twenty, twenty-three, twenty-five, thirty-three, thirty-four, thirty-six, forty-one, forty-three, forty-seven, and fifty-seven—should be struck for cause, and the trial court granted Risener's request only as to venire member fifteen. Risener thereafter requested twelve more peremptory challenges, and the trial court granted four. Risener used all of his allotted peremptory challenges, but an allegedly objectionable juror was nonetheless seated: number seventeen.

## B.    Trial

On December 23, 2016, the superintendent of the Irving Independent School District (IISD) received an email from an individual identified as Steven Bowen. Juan Carlos Martinez, IISD Deputy Superintendent, testified that Bowen alleged that the school district was employing an individual "accused of sex crimes against children." IISD referred the allegations to law enforcement.

Rose Peterson, a detective with the McLennan County Sheriff's Office, testified she contacted the complainant, Bowen, who stated he had been sexually abused by Risener between 1994 and 1996 at his childhood friend Brendan Wallace's home. As part of her investigation, Peterson contacted two members of Risener's former church, James Crouch and Bruce Bailey, after learning that Risener had read a letter confessing his actions to the congregation several years prior. Peterson testified, "[Crouch and Bailey]

3

corroborated everything that [the complainant] had told me." Peterson also spoke to Risener, who "adamantly denied that anything had occurred" but confirmed he had been living with the Wallace family at the time of the allegations and recognized the complainant.

Sandra Wallace testified that Risener, her nephew, came to live with them in June 1994. Risener was in graduate school at the time. Wallace confirmed Bowen would often come over to their home because he was good friends with her son, Brendan. Wallace stated she "didn't know anything" about the allegations involving Risener and Bowen.

Crouch and Bailey, two senior members of a church Risener and Bowen attended in their youth, testified that they had been approached by Bowen's parents regarding allegations of sexual abuse involving Risener in 2013. Crouch testified that, at that point, the family did not want to "press[] charges." Rather, the family wanted to make Risener's actions "known to the church." Crouch said Risener eventually provided a public statement to the congregation:

> As best I can remember, the statement was to the effect that several years ago—many years ago—I—I can't remember if the date was given or not— that he had had a homosexual contact with another individual as a minor and that that had involved touching. It had involved maybe some explicit videos and that he wanted that known to the congregation.

Crouch clarified that although "[i]t was clearly understood that [Bowen] was a minor" and Risener had been an adult when the contact occurred, Crouch had not realized there was a nine-year age difference between Bowen and Risener. Crouch testified that he was unaware that he was legally obligated to contact law enforcement.

Bowen, thirty-nine years old at trial and no longer residing in-state, testified that he was between fourteen and sixteen when the offenses occurred at the Wallace home.

4

Bowen said that Brendan was his best friend growing up, and he would often spend the night at his residence. Bowen stated the boys would sometimes sleep in Risener's bedroom, and he described multiple instances where Risener would "kick[] Brendan out of the room and lock[] the door." What began as tickling, escalated to touching under the clothes. Bowen testified that Risener touched his genitals and made him reciprocate. Risener also put his penis in Bowen's mouth.

Micah McKamie, a childhood friend of Bowen and Brendan, also testified that he had been sexually abused by Risener as a child during a church camp retreat and while at sleepovers at the Wallace residence. McKamie testified he was between twelve and fourteen years old when Risener touched McKamie's penis and "put his penis in my mouth."

The jury returned a guilty verdict, and Risener was sentenced to eight years in prison on all six counts, which the trial court ordered to run consecutively.[2]

## C.    Motion for New Trial

In a motion for new trial, Risener argued the State had intentionally withheld evidence of Brendan's statements, which were favorable to the defense. The attached affidavit, written and signed by Risener's trial counsel, stated that he had overheard the State speaking with a juror after Risener's case concluded. The affidavit stated that the State told the juror that Brendan "remembered nothing of the 'dozens' of assaults alleged to have been committed by the Defendant," and that is why Brendan had not been called as a witness at trial. Risener's trial counsel stated he contacted Brendan, who said "that he told [the State] that he did not remember any of the incidents that [Bowen] described."

---

[2] The trial court later reformed the judgment to order the sentences to run concurrently.

5

At a hearing on Risener's motion, the State argued, in relevant part, that (1) Risener was aware of Brendan's existence as a possible witness because his name was included in the offense reports, and Brendan was listed on the State's potential witness list; and (2) the fact that a member from the State's office had spoken to Brendan and Brendan had stated he could not recall what occurred twenty years prior was not information the State had an obligation to disclose to Risener.

At the hearing on Risener's motion, Risener admitted an affidavit from Brendan, which stated:

> Approximately a year ago, I was contacted by a woman who identified herself as a prosecutor in the case involving Shawn Douglas Risener. I told her that I had no recollection of any acts of impropriety between Shawn Risener and Steven Bowen.
>
> I received another telephone message from the McLennan County District Attorney's office a few weeks before Thanksgiving 2019, but I did not return the phone call.
>
> I did not receive a subpoena to testify in the trial of Shawn Risener, but, if I had, [I] would have testified that [I] do not remember being locked out of Shawn Risener's bedroom on any occasion when Steven Bowen spent the night at our home in McLennan County.

The trial court denied Risener's motion for new trial. This appeal followed.

## II.  CHALLENGES FOR CAUSE

Risener first argues that the trial court abused its discretion in denying his challenges for cause for eleven venire members: seventeen, twenty, twenty-three, twenty-five, thirty-three, thirty-four, thirty-six, forty-one, forty-three, forty-seven, and fifty-seven.

6

## A. Standard of Review and Applicable Law

"We review a trial court's ruling on a challenge for cause with considerable deference because the trial judge is in the best position to evaluate a venire member's demeanor and responses." *Tracy v. State*, 597 S.W.3d 502, 512 (Tex. Crim. App. 2020). "When a venire member's answers in voir dire are ambiguous, vacillating, unclear, or contradictory, particular deference is given to the trial court's decision." *Id.* We review the entire record to determine whether there is "sufficient evidence to support the trial court's ruling." *Id.* "A trial judge's ruling on a challenge for cause may be reversed only for a clear abuse of discretion." *Id.*; *see Jacobs v. State*, 560 S.W.3d 205, 211 (Tex. Crim. App. 2018).

"The purpose of voir dire is in part to elicit information that would establish a basis for a challenge for cause because the venire member is legally disqualified from serving or is biased or prejudiced for or against one of the parties or some aspect of the relevant law." *Sanchez v. State*, 165 S.W.3d 707, 710–11 (Tex. Crim. App. 2005). "A juror who states that he cannot consider the minimum punishment for a particular statutory offense is subject to a challenge for cause." *Cardenas v. State*, 325 S.W.3d 179, 185 (Tex. Crim. App. 2010); *see* TEX. CODE CRIM. PROC. ANN. art. 35.16(a) ("A challenge for cause is an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury."). "Where a party wishes to exclude a juror because of bias, it is the party seeking exclusion who must demonstrate, through questioning, that the potential juror lacks impartiality." *Buntion v. State*, 482 S.W.3d 58, 84 (Tex. Crim. App. 2016); *see Tracy*, 597 S.W.3d at 512. "The opposing party or trial judge may then examine the juror further to ensure that he fully understands and appreciates the position that he

is taking, but unless there is further clarification or vacillation by the juror, the trial judge must grant a challenge for cause." *Cardenas*, 325 S.W.3d at 185.

To preserve an objection to the denial of a challenge for cause, a defendant must have: (1) used all of his peremptory strikes, (2) asked for and was denied additional peremptory strikes, and (3) accepted an identified objectionable juror whom defendant would not otherwise have accepted had the trial court granted the defendant's challenge for cause (or granted him additional peremptory strikes so that he might strike the juror). *Buntion*, 482 S.W.3d at 83; *Chambers v. State*, 866 S.W.2d 9, 22 (Tex. Crim. App. 1993). To establish harm for an erroneous denial of a challenge for cause, the defendant must show on the record that he used a peremptory strike to remove the venireperson and thereafter suffered a detriment from the loss of the strike. *Comeaux v. State*, 445 S.W.3d 745, 750 (Tex. Crim. App. 2014); *Chambers*, 866 S.W.2d. at 23.

## B.    Discussion

In this case, the record shows that the trial court granted twenty-five jointly agreed challenges for cause and Risener thereafter: (1) made twelve specific challenges for cause, eleven of which were denied; (2) requested twelve additional peremptory strikes and received four additional peremptory strikes; (3) and though he exhausted all of his peremptory strikes, he did not use a peremptory strike on venire member seventeen.[3] *See Buntion*, 482 S.W.3d at 83. Thus, his issue has been preserved. *See id.*

---

[3] Of the eleven venire members argued on appeal, number seventeen was the only one Risener did not use a peremptory strike on. However, Risener also declined to use a peremptory strike on seated venire members eight, eleven, twenty-two, thirty, thirty-one, thirty-eight, and thirty-four—all of whom stated they could not consider a sentence as low as two years and recommend probation but later vacillated and were seated on the jury. Risener did not assert challenges for cause for the aforementioned seven venire members.

8

Risener argues the venire panel's response to the following question exemplifies a bias against the defense that necessitated a removal for cause:

> I want you to assume that you are serving on the jury. I want you to assume that you have found a person guilty of Indecency with a Child, okay? You found that with the intent to arouse or gratify the sexual desire of any person he engaged in sexual contact with a particular child under the age of 17 by touching the genitals of the child with his hand. I want you to assume that you have no reasonable doubt. I want to you [sic] assume that the other eleven people on the jury all agree with you, that you all have—have agreed beyond a reasonable doubt that the man sitting in front of you is guilty of indecency by contact. I want you to assume that the Defendant intentionally and knowingly engaged in the sexual contact with the child under the age of 17. Assume that he wanted to do it, that he meant to do it. Is there any way that you could ever honestly give fair consideration to a sentence as low as two years and recommend probation?

Forty-four out of sixty-two members of the panel answered "No"—including venire members seventeen, twenty, twenty-three, twenty-five, thirty-three, thirty-four, thirty-six, forty-one, forty-three, forty-seven, and fifty-seven. In an attempt to rehabilitate the venire panel, the State then posed the following question:

> . . . In this case you do not know anything about the facts. You don't know if we're dealing with a five-year-old child and a 60-year-old man or an 18-year-old defendant and a 16-year-old child, okay? That is as wide of an array as we can get. You do not know the facts, and the question is under the facts and under the law of Indecency with a Child by Contact that we've gone through—the defense has asked you about it, and I've asked you about it—under the law of Indecency with a Child by Contact, the law contemplates that it can be probation eligible, and it's a two to 20-year offense, okay, that there is a whole wide array of facts that can fit into that scenario.

> Based on that, just the law itself without knowing any facts of this case, none whatsoever, the ages of anybody involved, anything about it—we're not talking about this Defendant; we're talking about the law—is there any circumstance—can you contemplate any circumstance or consider any circumstance where you could give probation? Okay, and I'm going to go one-by-one just like that, and just like the defense attorney asked, could you consider probation when you are considering the offense of Indecency with a Child by Contact?

9

Only fifteen members of the panel answered "No." The remaining answered "Yes"—including venire members seventeen, twenty, twenty-three, twenty-five, thirty-three, thirty-four, thirty-six, forty-one, forty-three, forty-seven, and fifty-seven. None of the above-mentioned eleven venire members were asked to elaborate on their respective opinions. Moreover, none of the eleven venire members indicated they could not consider the full range of punishment when asked at the beginning of voir dire by the trial court and initially by the State.

Although their responses regarding their ability to consider the full range of punishment appeared to vary depending on which party was questioning, the trial court was best positioned to evaluate their demeanor and responses as a whole[4] and determine whether they would be able to perform their duties as a juror in accordance with their instructions and oath. *See Hernandez v. State*, 390 S.W.3d 310, 317 (Tex. Crim. App. 2012) ("When a prospective juror's answers are vacillating, unclear, or contradictory, we accord particular deference to the trial court's decision."); *Bell v. State*, 233 S.W.3d 583, 591 (Tex. App.—Waco 2007, pet. ref'd) (concluding the trial court did not abuse its discretion where the venire member "was a vacillating, equivocating, and contradictory prospective juror," and the trial court was "in the best position to evaluate her answers and Bell's allegation of bias"); *see also Soto-Hernandez v. State*, No. 07-18-00391-CR, 2020 WL 594486, at *3–4 (Tex. App.—Amarillo Feb. 6, 2020, no pet.) (mem. op., not designated for publication) (concluding there was no abuse of discretion in the trial court's

[4] For example, venire members twenty, twenty-three, and thirty-three questioned the veracity of complainants following #MeToo movement, with venire members twenty-three and thirty-three proposing ulterior motives behind allegations, namely, "jealousy" and "to get out of whatever was going on" in their own lives, respectively. Meanwhile, venire members twenty-three, forty-seven, and fifty-seven stated they believed one of the primary goals of sentencing was to rehabilitate the offender.

denial of a challenge for cause where the venire member was asked whether he could consider the entire range of punishment and the venire member vacillated between answering "No" and "Yes").

Risener argues this Court, in accordance with *Cardenas v. State*, should conclude that the venire member's initial statement of inability to consider the minimum punishment for a particular statutory offense as evidence of incurable bias. *Cardenas*, 325 S.W.3d at 184. However, the Texas Court of Criminal Appeals stated that following a party's assertion of juror bias, "[t]he opposing party or trial judge may then examine the juror further to ensure that he fully understands and appreciates the position that he is taking, *but unless there is further clarification or vacillation by the juror*, the trial judge must grant a challenge for cause." *Id.* (emphasis added.). Unlike in *Cardenas*, where counsel made no attempt to rehabilitate the panel with further examination and the venire members did not vacillate, there is evidence of vacillation here; and thus, it was within the purview of the trial court to determine whether the venire members could, in fact, consider the full range of punishment. *See id.* at 182, 184. The eleven venire members here were contradictory prospective jurors, and "we afford particular deference to the trial court's decision." *See Buntion*, 482 S.W.3d at 87. We overrule appellant's first issue.

### III.    MOTION FOR NEW TRIAL

Risener next argues that the trial court abused its discretion under the Texas Rules of Appellate Procedure[5] by denying his motion for new trial based on purported violations

---

[5] Texas Rule of Appellate Procedure 21.3 provides many of the grounds for which a trial court must grant a new trial. *See* TEX. R. APP. P. 21.3; *see also State v. Barragan*, 421 S.W.3d 16, 18 (Tex. App.—Waco 2013, pet. ref'd). However, Rule 21.3 is not an all-inclusive list, and "the trial court *may* grant a motion for new trial on other legal grounds as well." *State v. Herndon*, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007);

of *Brady*, article 39.14 of the Texas Code of Criminal Procedure, and the Texas Disciplinary Rules of Procedure and Conduct. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14; TEX. R. APP. P. 21.3; *Brady v. Maryland*, 373 U.S. 83 (1963); TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.09(d), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9).

## A.    Standard of Review

We review a trial court's ruling on a motion for new trial under an abuse of discretion standard. *Gonzalez v. State*, 616 S.W.3d 585, 594 (Tex. Crim. App. 2020). In conducting our review, we view the evidence in the light most favorable to the trial court's ruling and uphold the ruling if it is within the zone of reasonable disagreement. *Id.* (citing *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017)). We do not substitute our judgment for that of the trial court. *Id.*; *Horne v. State*, 554 S.W.3d 809, 813 (Tex. App.—Waco 2018, pet. ref'd). A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Gonzalez*, 616 S.W.3d at 594; *Horne*, 554 S.W.3d at 813.

## B.    *Brady*

First, we address Risener's *Brady* complaint. *Brady* requires the prosecution to disclose evidence that is favorable to the accused when that evidence is material to guilt

---

*see also Delafuente v. State*, No. 10-16-00376-CR, 2019 WL 5446028, at *6 (Tex. App.—Waco Oct. 23, 2019, pet. ref'd) (mem. op., not designated for publication).

To the extent that Risener argues that the trial court should have independently granted his motion for new trial under Rule 21.3, Risener has not provided us with an analysis of alternative legal grounds he seeks a new trial on—separate and apart from *Brady* and article 39.14 considerations, which are discussed *infra*. *See Herndon*, 215 S.W.3d at 907. We therefore conclude any issue regarding alternative legal grounds under Rule 21.3 to have been inadequately briefed. *See* TEX. R. APP. P. 38.1(h), (i); *see also Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011) ("We decide that this point of error is inadequately briefed and presents nothing for review as this Court is under no obligation to make appellant's arguments for her.").

or punishment. *See Brady*, 373 U.S. at 87. In other words, to establish a *Brady* violation, an appellant must demonstrate that: (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to the defendant; and (3) the evidence is material and admissible. *See id.*; *Ex parte Chaney*, 563 S.W.3d 239, 266 (Tex. Crim. App. 2018); *Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006). "Evidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Turner v. United States*, 137 S. Ct. 1885, 1893 (2017); *Ex parte Chaney*, 563 S.W.3d at 266; *Pena v. State*, 353 S.W.3d 797, 812 (Tex. Crim. App. 2011) (providing that "mere possibility" that undisclosed evidence might have assisted the defense or affected the outcome does not establish materiality in the constitutional sense). We must "evaluate the withheld evidence in the context of the entire record." *Turner*, 137 S. Ct. at 1893 (cleaned up).

Risener contends the State committed a *Brady* violation by withholding evidence of Brendan's conversation with the State. The State argues that Brendan's statement was not exculpatory and lacked materiality. After reviewing the record, we agree with the State. Risener's affidavit, written by his trial counsel and attached to his motion for new trial, states that Brendan told Risener's trial counsel "that he told [the State] that he did not remember any of the incidents that Mr. Bowen described." Risener argued that this statement was favorable to him and was withheld from him. At the hearing on Risener's motion for new trial, the State maintained that what Brendan had relayed to the State had been limited; Brendan only expressed: "I don't know anything. I don't remember anything. I was a little kid, and that was 25 years ago." In an affidavit signed by Brendan and

13

admitted during the hearing, Brendan stated, in relevant part: "I told [the State] that I had no recollection of any acts of impropriety between Shawn Risener and Steven Bowen. . . . [I] would have testified that [I] do not remember being locked out of [Risener's] bedroom on any occasion when [Bowen] spent the night at our home in McLennan County."

Assuming arguendo that this constitutes favorable evidence, Risener has not shown that the evidence is material. *See Ex parte Chaney*, 563 S.W.3d at 266. Brendan does not appear to dispute that Bowen stayed at his home at the same time Risener did; Brendan's mother confirmed as much at trial. Brendan states he could not recall whether any incidents as described by Bowen occurred. However, Bowen testified at trial that the assaults occurred outside of Brendan's presence, and therefore, Brendan's lack of recollection is of little consequence. *See id.*; *Higginbotham v. State*, 416 S.W.3d 921, 927 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *see also Lewis v. State*, No. 02-13-00367-CR, 2014 WL 7204708, at *12 (Tex. App.—Fort Worth Dec. 18, 2014, pet. ref'd) (mem. op., not designated for publication) (concluding that withheld testimony that a witness "could not remember being at [an individual's] house neither bolsters nor undercuts [that specific individual's] testimony," and thus, the appellant had failed to demonstrate favorability and materiality).

Moreover, at trial, Crouch and Bailey confirmed Risener publicly admitted to sexual abuse involving Bowen several years prior to his indictment, and McKamie testified Risener had also assaulted him under similar circumstances in the same time period. *See Ex parte Lalonde*, 570 S.W.3d 716, 726 (Tex. Crim. App. 2019); *Pena*, 353 S.W.3d at 812. Balancing the slight exculpatory value of Brendan's testimony against the evidence

14

supporting the conviction, we conclude that in the context of this trial, the cumulative effect of the withheld evidence is insufficient to undermine confidence in the jury's verdict. *See Ex parte Lalonde*, 570 S.W.3d at 726; *Morris v. State*, 530 S.W.3d 286, 294 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) ("When suppressed *Brady* material had no reasonable probability of affecting the outcome of the trial, it was not 'material' in the sense relevant to *Brady*."). Therefore, the trial court did not abuse its discretion in denying Risener's motion for new trial on this basis.

## C.      Article 39.14

Risener's article 39.14 of the Texas Code of Criminal Procedure complaint mirrors his contentions above. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14. The State, however, counters here that because the offenses alleged in this case were committed between 1994 and 1996, "the 2013 amendments to Article 39.14, specifically [Article 39.14(h)] regarding the disclosure of exculpatory, impeachment, or mitigating information that tends to negate the guilt of a defendant or would tend to his punishment, cannot apply."

When the Legislature passed the Michael Morton Act in 2013, it completely "revamped" article 39.14 of the Texas Code of Criminal Procedure to expand the availability and scope of discovery that must be produced by the State. *Watkins v. State*, No. PD-1015-18, __ S.W.3d __, __, 2021 WL 800617, at *6, *10 (Tex. Crim. App. Mar. 3, 2021) (observing that "under earlier versions of [article 39.14] that there was no general right of discovery in Texas," and "the Michael Morton Act did not merely amend a portion of Article 39.14(a); it revamped Article 39.14 completely"); *Young v. State*, 591 S.W.3d 579, 598 (Tex. App.—Austin 2019, pet. ref'd). Article 39.14 now creates a general, continuous duty of the State to disclose "before, during, or after trial" any discovery

15

evidence "tend[ing] to negate the guilt of the defendant" or reduce the punishment the defendant could receive. TEX. CODE CRIM. PROC. ANN. art. 39.14(h), (k); *Ex parte Martinez*, 560 S.W.3d at 702. The Legislature did not limit the applicability of article 39.14 to "material" evidence. *Watkins*, 2021 WL 800617, at *9; *Ex parte Martinez*, 560 S.W.3d 681, 702 (Tex. App.—San Antonio 2018, pet. ref'd). Thus, the prosecutor's duty to disclose evidence under article 39.14 is now "much broader" than the prosecutor's duty to disclose as a matter of due process under *Brady*. *Watkins*, 2021 WL 800617, at *9; *Ex parte Martinez*, 560 S.W.3d at 702.

However, the change in law made by the Michael Morton Act "applies to the prosecution of an offense committed on or after the effective date [January 1, 2014] of this Act." Act of May 14, 2013, 83d Leg., R.S., ch. 49, § 3, 2013 Tex. Gen. Laws 106, 108 (codified at TEX. CODE CRIM. PROC. ANN. art. 39.14). "The prosecution of an offense committed before the effective date of this Act is covered by the law in effect when the offense was committed." *See id.*; *Love v. State*, 600 S.W.3d 460, 464 (Tex. App.—Fort Worth 2020, pet. ref'd); *see also Padilla v. State*, No. 03-18-00065-CR, 2018 WL 3118542, at *2 n.21 (Tex. App.—Austin June 26, 2018, no pet.) (mem. op., not designated for publication) (noting the non-retroactivity of the Michael Morton Act); *Rendon v. State*, No. 11-14-00080-CR, 2016 WL 787150, at *2 n.6 (Tex. App.—Eastland Feb. 25, 2016, pet. ref'd) (mem. op., not designated for publication) (same).

Article 39.14 at the time of this offense only required the State to "produce and permit the inspection and copying . . . [by] the defendant of any designated documents, papers, . . . which constitute or contain evidence material to any matter involved in the action . . . ." where it was first ordered by the trial court to do so. Act of May 27, 1965,

59th Leg., R.S., ch. 722, § 1, 1965 Tex. Gen. Laws 317, 475 (eff. Jan. 1, 1966), *amended by* Act of May 21, 1999, 76th Leg., R.S., ch. 578, § 1, 1999 Tex. Gen. Laws 3118, 3118 (eff. Sept. 1, 1999) (current version at TEX. CODE CRIM. PROC. ANN. art. 39.14); *Lagrone v. State*, 942 S.W.2d 602, 615 (Tex. Crim. App. 1997) ("Under our existing law, the defendant bears the burden of showing materiality."); *see also Watkins*, 2021 WL 800617, at *15 (observing that historically the Court "only reversed when the evidence at issue would have made a difference at guilt or punishment, but we did so after holding that a trial court could have—and should have—ordered disclosure pursuant to its discretionary authority").

Having already determined *supra* that Risener failed to show materiality with respect to the evidence he argues the State improperly withheld, we likewise conclude the trial court did not abuse its discretion in denying Risener's motion for new trial under the version of article 39.14 in effect at the time of the offense. *See Lagrone*, 942 S.W.2d at 615; *see also Watkins*, 2021 WL 800617, at *15.

**D.      Texas Disciplinary Rules of Professional Conduct**

Risener additionally contends that the trial court erred in denying his motion for new trial because the State's aforementioned conduct violated Rule 3.09 of the Texas Disciplinary Rules of Professional Conduct. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.09(d), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9).

Rule 3.09, entitled "Special Responsibilities of a Prosecutor," provides that the prosecutor in a criminal case shall, among other things, "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the

guilt of the accused or mitigates the offense . . . ." *Id*. However, violations of the disciplinary rules alone are not grounds for reversal of a criminal conviction unless the defendant can show the alleged disciplinary rule violation affected his substantial rights or deprived him of a fair trial. *See Landers v. State*, 256 S.W.3d 295, 310 n.56 (Tex. Crim. App. 2008) ("The [disciplinary] rules do not grant a defendant standing or some 'systemic' right to complain about an opposing party's alleged disciplinary rule violations that do not result in 'actual prejudice' to the defendant." (quoting *House v. State*, 947 S.W.2d 251, 253 (Tex. Crim. App. 1997))); *see also Gallegos v. State*, No. 08-05-00081-CR, 2006 WL 3317964, at *4 (Tex. App.—El Paso Nov. 16, 2006, pet. ref'd) (mem. op., not designated for publication). If a defendant cannot show actual prejudice from an alleged disciplinary rule violation by the State, then he will not be entitled to relief on appeal. *House*, 947 S.W.2d at 253.

In an attempted show of prejudice, Risener asserts that the State's "*Brady* violation is necessarily a violation of [Rule] 3.09(d)." *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.09(d); *see also Morales v. State*, No. 08-18-00172-CR, 2020 WL 6882730, at *6 (Tex. App.—El Paso Nov. 13, 2020, pet. ref'd) (mem. op., not designated for publication) (observing that "Rule 3.09[(d)] is a codification of the holding in *Brady*"). We, however, have previously concluded there was no *Brady* violation because Risener was not actually prejudiced by the State's purported withholding of Brandon's statement. *See Turner*, 137 S. Ct. at 1893 (providing that defendants are "entitled to a new trial only if they 'establis[h] the prejudice necessary to satisfy the 'materiality' inquiry'" (quoting *Strickler v. Greene*, 527 U.S. 263, 282 (1999))); *Pena*, 353 S.W.3d at 812. Accordingly, the trial court did not

abuse its discretion in denying Risener's motion for new trial on the basis of a disciplinary rule violation.

We overrule Risener's second issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
22nd day of April, 2021.